## In re BERMAN.

### BERMAN v. McDONNELL et al.
### No. 5558.

Circuit Court of Appeals, Seventh Circuit.
Dec. 18, 1935.

Eugene L. Garey, Earl J. Garey, Milton I. Hauser, William Helfer, and Mitchel J. Valicenti, all of New York City, and James C. Byrne, of Chicago, Ill., for appellant.

Michael L. Igoe, U. S. Atty., and Edmond Sullivan and Warren Canaday, Asst. U. S. Attys., all of Chicago, Ill., A. E. Gottshall, Atty., Department of Justice, of Washington, D. C., and H. T. Nichols, Sp. Atty., Department of Justice, of Atlanta, Ga., for appellees.

Before EVANS and SPARKS, Circuit Judges, and BRIGGLE, District Judge.

EVANS, Circuit Judge.

The basis for the writ is the alleged unlawful custody of appellant arising out of his being transferred against his will from the U. S. Northeastern Penitentiary, located at Lewisburg, Pennsylvania, to a penitentiary in California, pursuant to an alleged collusive plan of the Federal officials and state officials of California whereby, upon the expiration of appellant's present term of incarceration in the Federal prison, he would be released in California's jurisdiction and might there be seized by California authorities for further incarceration, because of conviction and sentence, for violation of a criminal statute of California.

Appellees move to dismiss the appeal on the ground that the controversy is moot, appellant having been transported to Alcatraz Island, California, a place without the court's jurisdiction, before this appeal was taken.

Appellant was sentenced by the United States District Court of California, November 5, 1928, to serve seven years in a Federal prison and to pay a fine of $16,000 and stand committed until the fine was paid. He was originally incarcerated in the Federal prison in the state of Washington, then transferred to Leavenworth penitentiary, and then to a Federal prison in Pennsylvania, the Northeastern penitentiary. This last transfer was made at his request.

He started service of sentence on April 25, 1930, and the terms of imprisonment, allowing for good behavior would have expired June 22, 1935, provided the fines were paid.

On June 12, 1935, the order here attacked was made, directing his removal to the Federal penitentiary at Alcatraz Island, California.

While being so removed and in Chicago, he applied to the United States District Court for the Northern District of Illinois for a writ of habeas corpus. The court, after hearing, quashed the writ.

Appellees rely, for justification of the removal, upon the order of the Director of the Bureau of Prisons, who derives his authority from section 7, Act of May 14, 1930, 18 U.S.C.A. § 753f. They also challenge the jurisdiction of this court,

basing their contention upon the fact that appellant was not within the jurisdiction of this court when this appeal was taken. In other words, after the District Court quashed the writ, the Federal authorities continued on their way to California with appellant in their custody.

It is alleged by appellant that the sheriff of Los Angeles requested the Attorney General of the United States to transfer appellant to a Federal prison located in California before the termination of appellant's sentence so as to make it possible for the authorities in California to apprehend him and place him in the California jail, pursuant to the sentence which had been pronounced upon him, but which had not been executed because of his confinement in a Federal prison. Appellant alleged that his wife and child live in New York and that he plans to go there on securing his freedom, and he argues that his success in getting transferred to the Federal penitentiary in Pennsylvania would be nullified if the order transferring him to California before his Federal prison sentence expired, is carried out. He also states that his life would be in danger if he were released in California.

His legal contentions are that the enforced removal was contrary to Federal statute, and, regardless of the terms of the statute, he is being deprived of his constitutional rights under the Fifth Amendment to the Federal Constitution.

The first question is resolvable into one of authority on the part of the Director of the Bureau of Prisons to order a transfer under section 7 (18 U.S.C.A. § 753f), or any other section, of one who had been sentenced prior to May 14, 1930, the date of the enactment. It also involves the question of delegation of power from the Attorney General to the Director of the Bureau of Prisons, as well as the alleged limitation on the power of the former to act save for reasons set forth in the Act.

The pertinent sections of the statutes are quoted in the margin.[1]

---

[1] 18 U.S.C.A. § 753:

"There is established in the Department of Justice a Bureau of Prisons, to be in charge of a director * * * and shall be appointed by and serve directly under the Attorney General. * * * All of the authority, powers, and duties conferred by law or regulation upon the Superintendent of Prisons * * * are hereby transferred to the Bureau of Prisons. The Attorney General shall have the power to appoint such additional officers and employees as may be necessary."

18 U.S.C.A. § 753a:

"The Bureau of Prisons shall have charge of the management and regulation of all Federal penal and correctional institutions and be responsible for the safekeeping, care, protection, instruction, and discipline of all persons charged with or convicted of offenses against the United States."

18 U.S.C.A. § 753b:

"It shall be the duty of the Bureau of Prisons to provide suitable quarters for the safe-keeping, care, and subsistence of all persons convicted."

18 U.S.C.A. § 753f:

"All persons convicted of an offense against the United States shall be committed, for such terms of imprisonment and to such types of institutions as the court may direct, to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences of all such persons shall be served. The Attorney General may designate any available, suitable, and appropriate institutions, whether maintained by the Federal Government or otherwise or whether within or without the judicial district in which convicted. The Attorney General is also authorized to order the transfer of any person held under authority of any United States statute from one institution to another if in his judgment it shall be for the well-being of the prisoner or relieve overcrowded or unhealthful conditions in the institution where such prisoner is confined or for other reasons."

28 U.S.C.A. § 452:

"The * * * several judges * * * shall have power to grant writs of habeas corpus for the purpose of an inquiry into the cause of restraint of liberty."

28 U.S.C.A. § 453:

"The writ of habeas corpus shall in no case extend to a prisoner in jail unless where he is in custody under or by color of the authority of the United States * * * or is in custody in violation of the Constitution or of a law or treaty of the United States."

28 U.S.C.A. § 461:

"The court, or justice, or judge shall proceed in a summary way to determine the facts of the case, by hearing the testimony and arguments, and thereupon to dispose of the party as law and justice require."

1 U.S.C.A. § 1:

"In determining the meaning of any Act

It is unnecessary for us to consider any question other than the validity of the order of removal. Authority for the making of this order is statutory. 18 U.S.C.A. § 753 (f).

This statute is remedial in its nature and should be given a liberal construction. It was to better effectuate the general purpose of imprisonment. Fairly construed as a remedial act, we think it was intended to apply to prisoners confined under sentences pronounced before, as well as after its passage. Nothing appears in the statute which would negative this conclusion.

Likewise, a fair construction of the statute leads us to the conclusion that it was not the Attorney General personally who was to pass upon the transfer of each Federal prisoner, but that section 1, title 1, U.S.C.A., covered the instant case, and in addition to the Attorney General, "any person authorized by law to perform the duties of such office" included the Director of the Bureau of Prisons. In the creation of this office, it was provided that he should serve directly under the Attorney General.

There is also to be found in the first sentence of section 7 this phrase "Attorney General *or his authorized representative.*" It is argued that the words "or his authorized representative" do not appear in some of the other sentences of this section. We think it is fair to assume that by section 7, Congress was designating the official who might name the prison wherein the prisoner should be confined. It was the Attorney General or his authorized representative. It is rather difficult to assume that Congress in one sentence should give to the Attorney General *"or his authorized representative"* authority to designate the prison wherein the prisoner should be confined, but in a case where a change was necessary, only the Attorney General could designate the prison.

In Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 66 L.Ed. 607, 22 A.L.R. 879, the court held that the Federal court was authorized to transfer a Federal prisoner to a state court for the purpose of subjecting him to a trial. This was before the statute, here under consideration granting authority to move a prisoner, was enacted. Chapman v. Scott (C.C.A.) 10 F.(2d) 690; Id. (D.C.) 10 F.(2d) 156, is another authority for transferring a prisoner in a Federal penitentiary to a state prison so that he might be tried in the state court for murder. In other words, the authority to remove a prisoner from one jail to another, for the prisoner's betterment or for the good of society, existed, without legislative authorization. It was further held that the Attorney General acted for the United States in such removals.

Certainly in the light of these decisions and the generally recognized comity that exists between Federal and state governments, there is no reason for giving a construction to a statute which would tend to defeat this comity. On the other hand, a construction should be given to it that would be consistent with this existing public policy.

Appellant alleged in his petition for the writ that his removal from Pennsylvania to California was in furtherance of an "illegal conspiracy between the Attorney General and his agents and the agents of the United States and the agents of the State of California." This serious charge, reflecting as it does upon the Federal Government and the government of the State of California, can hardly be passed unnoticed. Appellant's petition contained other fact allegations which were the basis for his prayer for the writ of habeas corpus. To charge government officials with being parties to an "illegal conspiracy" when not germane to the case is so unusual as to justify our examination of the facts to ascertain their truthfulness. The "illegal conspiracy" here charged has this fact basis, and none other. Appellant was convicted of a felony in the Federal court and was sentenced to serve seven years in the penitentiary and pay a fine of $16,000. He was sought by the State of California for violation of its laws for which he had been convicted. The character of the charge preferred against him by the State of California is not fully stated. The nature of the offense, however, may be inferred from appellant's allegation that

---

or resolution of Congress, * * * the reference to any officer shall include any person authorized by law to perform the duties of such office, unless the context shows that such words were intended to be used in a more limited sense."

his life would be endangered if he were returned to California.

For state and Federal Government agencies to unite to vindicate their respective criminal statutes and to apprehend and punish criminals does not constitute an "illegal conspiracy." Counsel should be able to distinguish between united efforts of state and Federal authorities to protect society against raids of a criminal, or a group of criminals, and an illegal conspiracy. The latter generally describes a criminal offense. The former is commendable, cooperative action by public officials.

What was said by the Supreme Court in Ponzi v. Fessenden, 258 U.S. 254, 42 S.Ct. 309, 310, 66 L.Ed. 607, 22 A.L.R. 879, is illuminating:

"We live in the jurisdiction of two sovereignties, each having its own system of courts to declare and enforce its laws in common territory. It would be impossible for such courts to fulfil their respective functions without embarrassing conflict unless rules were adopted by them to avoid it. The people for whose benefit these two systems are maintained are deeply interested that each system shall be effective and unhindered in its vindication of its laws. The situation requires, therefore, not only definite rules fixing the powers of the courts in cases of jurisdiction over the same persons and things in actual litigation, but also a spirit of reciprocal comity and mutual assistance to promote due and orderly procedure.

"One accused of crime has a right to a full and fair trial according to the law of the government whose sovereignty he is alleged to have offended, but he has no more than that. He should not be permitted to use the machinery of one sovereignty to obstruct his trial in the courts of the other, unless the necessary operation of such machinery prevents his having a fair trial. He may not complain if one sovereignty waives its strict right to exclusive custody of him for vindication of its laws in order that the other may also subject him to conviction of crime against it. In re Andrews (D.C.) 236 F. 300; United States v. Marrin (D.C.) 227 F. 314. Such a waiver is a matter that addresses itself solely to the discretion of the sovereignty making it and of its representatives with power to grant it.

"* * * The fact that he may have committed two crimes gives him no immunity from prosecution of either. * * *

"In the case at bar, the federal District Court first took custody of Ponzi. He pleaded guilty, was sentenced to imprisonment and was detained under United States authority to suffer the punishment imposed. Until the end of his term and his discharge, no state court could assume control of his body without the consent of the United States. * * *

"There is no express authority authorizing the transfer of a federal prisoner to a state court for such purposes. *Yet we have no doubt that it exists and is to be exercised with the consent of the Attorney General.* In that officer, the power and discretion to practice the comity in such matters between the federal and state courts is vested. The Attorney General is the head of the Department of Justice. Rev.Stat. § 346 [5 U.S.C.A. § 291]. He is the hand of the president in taking care that the laws of the United States in protection of the interests of the United States in legal proceedings and in the prosecution of offenses, be faithfully executed. * * *

"The prisons of the United States and the custody of prisoners under sentence are generally under the supervision and regulation of the Attorney General. * * *

"This recital of the duties of the Attorney General leaves no doubt that one of the interests of the United States which he has authority and discretion to attend to through one of his subordinates in a state court under section 367, Rev.Stat. [5 U.S.C.A. § 316], is that which relates to the safety and custody of United States prisoners in confinement under sentence of federal courts. In such matters he represents the United States and may on its part practice the comity which the harmonious and effective operation of both systems of courts requires, provided it does not prevent enforcement of the sentence of the federal courts or endanger the prisoner. * * *

"The authorities, except when special statutes make an exception, are all agreed that the fact that a defendant in an indictment is in prison serving a sentence for another crime gives him no immunity from the second prosecution. One of the best-considered judgments on the subject is Rigor v. State, 101 Md. 465, 61 A.

631, 4 Ann.Cas. 719. The Supreme Court of Maryland said (page 471 of 101 Md., 61 A. 631, 634):

" 'The penitentiary is not a place of sanctuary; and an incarcerated convict ought not to enjoy an immunity from trial merely because he is undergoing punishment on some earlier judgment of guilt.'

"Delay in the trial of accused persons greatly aids the guilty to escape because witnesses disappear, their memory becomes less accurate and time lessens the vigor of officials charged with the duty of prosecution. If a plea of guilty and imprisonment for one offence is to postpone trial on many others, it furnishes the criminal an opportunity to avoid the full expiation of his crimes. These considerations have led most courts to take the same view as that expressed in the case just cited."

It is also significant that there was no evidence to sustain the fact allegations upon which the illegal conspiracy charge was predicated. The legal presumptions which flow from the official action of the representative of the Attorney General, in the absence of evidence to the contrary, support the conclusion that removal was for the well being of the prisoner, or to relieve an over-crowded condition of the penitentiary wherein he was confined or for other reasons defined by the statute.

The judgment is affirmed.