Lloyd **MULLICAN** and Kenneth Eugene
Shores, Appellants,

v.

**UNITED STATES** of America,
Appellee.

No. 16582.

United States Court of Appeals
Fifth Circuit.

Feb. 26, 1958.

George F. Edwardes, Texarkana, Ark., for appellants.

William M. Steger, U. S. Atty., Harlon E. Martin, Asst. U. S. Atty., Tyler, Tex., for appellee.

Before CAMERON, JONES and WISDOM, Circuit Judges.

JONES, Circuit Judge.

The appellants, Lloyd Mullican and Kenneth Eugene Shores, were charged by separate indictments under the Federal Escape Act, 18 U.S.C.A. § 751, with unlawfully escaping, on or about June 18, 1956, "from confinement in the Federal Correctional Institution, Texarkana, Texas, in which said institution" they were "then and there confined by direction of the Attorney General, said confinement being by virtue of a conviction of an offense against the laws of the United States." After their unannounced departure from the institution

they were apprehended and placed in punitive segregation, a phrase which for our purposes here may be translated as meaning solitary confinement. While so held, Shores made a confession to an F.B.I. agent. Mullican and Shores were separately indicted and entered pleas of not guilty. The cases were consolidated for trial. Verdicts of guilty were returned and sentences were imposed. A number of contentions are urged in support of the claim that the convictions were erroneous.

■ The use of the confession is challenged on the ground that Shores was not promptly taken before a Commissioner for a preliminary hearing pursuant to Rule 5(a), Fed.Rules Crim.Proc. 18 U.S.C.A., and because of this the defendant Shores was deprived of his right to be informed as to the nature of the offense, as to his right of counsel, and as to his right to refrain from self-incrimination. The so-called McNabb doctrine is invoked in support of this contention. McNabb v. United States, 318 U.S. 332, 63 S.Ct. 608, 87 L.Ed. 819. The McNabb rule is that "A confession is inadmissible if made during illegal detention due to failure promptly to carry a prisoner before a committing magistrate, whether or not the 'confession is the result of torture, physical or psychological * * *.'" Upshaw v. United States, 335 U.S. 410, 69 S.Ct. 170, 172, 93 L.Ed. 100. See Mallory v. United States, 354 U.S. 449, 77 S.Ct. 1356, 1 L.Ed.2d 1479. The Supreme Court has refused "to extend the McNabb fixed rule of exclusion to statements to police or wardens, concerning other crimes while prisoners are legally in detention on criminal charges". United States v. Carignan, 342 U.S. 36, 72 S.Ct. 97, 102, 96 L.Ed. 48. Since Shores and Mullican were lawfully detained they were subject to proper questioning without being taken before a Commissioner. The confession of Shores was properly admitted.

■ The appellants would have us say that because they were given punitive segregation any other punishment would amount to double jeopardy. We are in agreement with the view of the Fourth Circuit which was thus expressed:

"Criminal prosecution for the crime of escape is not prohibited under the double jeopardy clause of the fifth amendment because a convict guilty thereof has upon his recapture been subjected to discipline by the prison authorities for the violation of prison discipline involved". Patterson v. United States, 4 Cir., 1950, 183 F.2d 327, 328, certiorari denied 340 U.S. 893, 71 S.Ct. 200, 95 L.Ed. 647.

There was no double jeopardy.

The appellants contend that the appointment of counsel was so long delayed as to amount to a denial of their substantial rights. The record does not show when counsel was assigned. If any additional time for preparation for trial was needed the record does not indicate it. Although Shores did not have counsel at the time of his confession, he was advised of his right to counsel. We see no merit in the contention and if there were it was not presented to the trial court nor preserved for review.

■ The appellants objected to the introduction at the trial of Government exhibits 2, 3 and 4, and urge that the admission of these documents was error requiring reversal. Government Exhibit 1 is a copy of the judgment and sentence of the District Court for the Northern District of Alabama by which Shores was sentenced for interstate transportation of a stolen automobile, to three years imprisonment on April 20, 1953. Endorsed on the judgment is the marshal's return showing the delivery of Shores to the U. S. Penitentiary at Atlanta, Georgia. The copy is authenticated by the certificate of the clerk of the court. No objection was made to this document. Government Exhibit 2 is a photostatic copy of the record of the judgment and sentence of the District Court for the Southern District of Texas showing that Mullican was sentenced to two years imprisonment on March 10, 1954. Included as a part of Government Exhibit 2 is a copy of the return of the marshal showing the

delivery of Mullican pursuant to the sentence to the Federal Reformatory at El Reno, Oklahoma, on March 19, 1954. Both of these documents are authenticated by the certificate of the clerk of the court with the seal of the court affixed. The copy of a record is no less a copy, and a copy of an instrument is not any less a copy, because reproduced by photographic process.

The Federal statute says:

"(a) Books or records of account or minutes of proceedings of any department or agency of the United States shall be admissible to prove the act, transaction or occurrence as a memorandum of which the same were made or kept.

"(b) Properly authenticated copies or transcripts of any books, records, papers or documents of any department or agency of the United States shall be admitted in evidence equally with the originals thereof." 28 U.S.C.A. § 1733.

The Federal Rules provide:

"An official record or an entry therein, when admissible for any purpose, may be evidenced by an official publication thereof or by a copy attested by the officer having the legal custody of the record, or by his deputy, and accompanied with a certificate that such officer has the custody. If the office in which the record is kept is within the United States or within a territory or insular possession subject to the dominion of the United States, the certificate may be made by a judge of a court of record of the district or political subdivision in which the record is kept, authenticated by the seal of the court, or may be made by any public officer having a seal of office and having official duties in the district or political subdivision in which the record is kept, authenticated by the seal of his office." Rule 44, Fed.Rules Civ.Proc. 28 U.S.C.A.

The rule quoted is applicable to criminal as well as to civil actions. Rule 27, Fed. Rules Crim.Proc. 18 U.S.C.A. The documents comprising Government Exhibit 2 were properly authenticated and were properly admitted.

Government Exhibit 3 is a group of photostatic copies of documents. One of these purports to be a copy of a letter from the Director of the Bureau of Prisons to the United States Marshal at Houston, Texas, designating the Federal Reformatory at El Reno, Oklahoma, as the place of confinement for Mullican. The certificate of authentication attached to this series of instruments is signed by the Acting Director of the Bureau of Prisons with the seal of the Bureau affixed. It recites that the original of the letter is in the files of the United States Marshal at Houston. The original document not being in the custody of the Bureau of Prisons, we think the purported authentication by its acting director would not meet the requirements of the rules of admissibility.

Included among the documents forming a part of Government Exhibit 3 are photostatic copies of copies of transfer orders of the Director of Prisons for the transfer of Shores from the penitentiary at Atlanta to the U. S. Penitentiary at Leavenworth, Kansas, from Leavenworth to the Federal Correctional Institution at Milan, Michigan, and from there to the Texarkana institution; and a photostatic copy of a copy of an order transferring Mullican from the Federal Reformatory at El Reno, Oklahoma, to Texarkana. These photostatic copies of transfer orders are of instruments on printed forms. Each bears at the foot of the page a notation reading "COPY.—To be returned to the Bureau of Prisons, Washington, D. C." The annexed certificate reads:

"District of Columbia, ss

"I, A. H. Conner, Acting Director of the Bureau of Prisons, Department of Justice, hereby certify that the attached three orders of transfer for Kenneth Eugene Shores, dated January 6, 1956, January 7, 1955, September 29, 1953, respectively, and order of transfer for Lloyd Ray Mullican dated July 20, 1954 are true

and correct photocopies of copies of documents, the originals of which are on file at the United States Penitentiary, Atlanta, Georgia. The attached designation for Lloyd Ray Mullican, dated March 12, 1954, is a true and correct photocopy of copy of a document, the original of which is in the files of the United States Marshal in Houston, Texas.

"In Witness Whereof, I have hereunto set my hand and caused the seal of the Bureau of Prisons to be affixed this 1st day of March, 1957.

[Signed] "A. H. Conner,
"Acting Director,
[Seal] Bureau of Prisons."

■ It is our view that this certificate does not meet the requirements of the rules. It is not shown by the certificate that the copies, from which the photocopies were made, were of themselves official documents or that they were true copies of the originals. The certificate shows the transfer orders were kept at Atlanta, Georgia. The certificate, signed by the Acting Director of the Bureau of Prisons and attested by the seal of the Bureau, does not recite that the Acting Director has custody of the original documents or that he has official duties in the political subdivision where the records are kept. We might not perhaps require proof that the Bureau of Prisons has custody of its transfer orders, that the Acting Director is its administrative head and that he has official duties at the Atlanta Penitentiary but we do not think that copies of official records and documents can be properly admitted in evidence without a substantial compliance with the statute and the rules. We think that the certificate annexed to the instruments constituting Government Exhibit 3 did not comply and error was committed in admitting this Exhibit.

Government Exhibit 4 consisted of photostatic copies of a Certificate of Parole issued to Mullican in December, 1954, at which time he was an inmate of Texarkana, an Order of Revocation of the Parole, a Warrant for his return to

Texarkana and a Marshal's return showing the delivery pursuant to the Warrant of Mullican to Texarkana on May 18, 1956. These were certified as being exact copies of official documents issued by the United States Board of Parole. The certificate was signed by the Chairman of the Board of Parole, and in this form:

"District of Columbia, Washington, D. C., ss.

"I, Scovel Richardson, Chairman, United States Board of Parole, hereby certify that the three attached instruments are exact copies of official documents issued by the United States Board of Parole, in the case of Lloyd Ray Mullican-8786-TT.

"The documents are as listed below:
Parole Certificate
Warrant
Order of Revocation

"Witness my hand and seal this 1st day of March, 1957.

[Signed] "Scovel Richardson
[Seal] Chairman

"I hereby certify that this document was signed in my presence this 1st day of March, 1957 and that I have custody of the seal of the United States Board of Parole, which is affixed hereto.

[Signed] James C. Neagles
Acting Parole Executive."

This certificate, in addition to having some of the infirmities inherent in Exhibit 3, is also defective in not containing any recital saying that the officer making the certificate has the custody of the records. We conclude that the court erred in admitting Government Exhibit 4.

■■ Since there seems to be little if any question but that the appellants were inmates of the Federal Correctional Institution at Texarkana and that they escaped from it, it seems proper to consider whether or not the admission of Government Exhibits 3 and 4 was harmless error. The statute defining the

crime for which the appellants were indicted, tried and convicted, provides that:

"Whoever escapes or attempts to escape from * * * any institution in which he is confined by direction of the Attorney General, * * shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,-000 or imprisoned not more than one year, or both". 18 U.S.C.A. § 751.

It may be unnecessary to trace a prisoner by documentation from courtroom to the place from which he escaped in order to sustain a conviction for escape, but if the indictment charges, as do the indictments against Mullican and Shores, that the accused was in confinement by virtue of a conviction, there must be proof that there was a conviction and that the escape was from confinement by virtue of the conviction. Convictions are shown by Government Exhibits 1 and 2, but with Exhibits 3 and 4 excluded the confinement pursuant to convictions was not established. Although the validity of the conviction is not an essential element of the offense as was held in Aderhold v. Soileau, 5 Cir., 1933, 67 F.2d 259, and in United States v. Jerome, 2 Cir., 1942, 130 F.2d 514; 317 U.S. 606, 63 S.Ct. 62, 87 L.Ed. 492, there must be proof of confinement pursuant to a conviction. This is generally shown by official records. 18 Am.Jur. 370, Escape, Prison Breaking and Rescue § 27. The errors were, in our view, prejudicial.

■ An objection was also made to the introduction of the transfer orders on the ground that they were not signed by the Attorney General but by an Acting Director of the Bureau of Prisons. The pertinent statutory provisions are:

"Persons convicted of an offense against the United States shall be committed * * * to the custody of the Attorney General of the United States or his authorized representative, who shall designate the places of confinement where the sentences shall be served.

\* \* \* \* \* \*

"The Attorney General may order any inmate transferred from one institution to another." 18 U.S.C.A. § 4082.

This question has been considered in the Seventh Circuit and it was there determined, and properly so we think, that the Director of the Bureau of Prisons was the "authorized representative" of the Attorney General and empowered to direct the transfer of Federal prisoners from one institution to another. In re Berman, 7 Cir., 1935, 80 F.2d 361. See United States ex rel. Nicholson v. Dillard, 4 Cir., 1939, 102 F.2d 94.

■ Shores points out that he was sentenced on April 20, 1953, committed on April 30, 1953, for three years, and was charged with an escape on June 18, 1956, more than three years later. On this he asserts that, so far as the record shows, his confinement was unlawful at the time of the escape and hence the escape was lawful. The doctrine of self help is not available to a prisoner in a penal or correctional institution. Remedies are available for procuring through legal process the release of those who are unlawfully held in custody. This Court has stated the rule to be:

"The [former] statute, 18 U.S.C.A. § 753(h), forbids escape, not only to those 'properly in the custody of the Attorney General' but also to all 'who are confined in any penal or correctional institution, pursuant to his direction,' without mention of the propriety of the confinement. We are of opinion that attempts at escape from such institutions are thereby forbidden to all inmates, and that, if they consider their confinement improper, they are bound to take other means to test the question." Aderhold v. Soileau, supra, [67 F.2d 260.]

There is no such difference between the former act, 18 U.S.C.A. § 753(h) and the present statute, 18 U.S.C.A. § 751, as distinguishes the Aderhold case from the one before us. See also United States v. Jerome, supra; Godwin v. United States, 8 Cir., 1950, 185 F.2d 411; Bayless v. United States, 9 Cir., 1944, 141 F.2d 578.

 Each of the defendants asserted insanity as a defense. Hospital reports of a Government hospital with respect to the appellants' mental condition were offered in evidence and objections to their admission were sustained. The appellants say that if the Government's Exhibits 2, 3 and 4 are admissible, these records, authenticated by the hospital authorities, are likewise admissible. The authentication establishes the genuineness of the copy of an official record. The appellants rely upon the Government's records provisions of 28 U.S.C.A. §§ 1732–1733. In a similar case where the introduction of like records was sought this Court said:

"The evidence as to England's capacity to commit crime was in conflict. There was offered in his behalf, bound together under one certificate, thirty-three sheets purporting to be photostatic copies of hospital records and medical reports concerning England while he was in Navy hospitals between March, 1945, and March 20, 1946, when he was recommended for honorable discharge from the Navy. The documents so bound together were offered as a whole, objected to as a whole as hearsay, and ruled out as a whole. It is now urged that they are admissible under 28 U.S.C.A. § 1732 as contemporaneous records 'made in the course of any business', and also, as public records made under public law. We have been referred to no statute or regulation of the Navy requiring these records to be made. The Navy Hospitals may be said to be conducting a business within the meaning of Sect. 1732, so that the routine record of what is done with or to or for a patient is admissible. But some of the documents are England's account of his past life and are clear hearsay. Others are opinions of individual physicians, based on this past history, on his repeated absences without leave, resulting in his being tried four times by courts-martial, and on their own experience with him, the conclusion being that he suffered from 'mental deficiency, (organic brain disease)'. These we think are not contemporaneous records of events, but are expert opinions based in part on hearsay, with no opportunity for cross-examination. To be evidence in a criminal case the witness ought to be produced to tell the facts he knows and then to get his opinion on them and what has been proved additionally. If the United States were offering this record against England to convict him, plainly this ought to be required; and so it ought when England offers it." England v. United States, 5 Cir., 1949, 174 F.2d 466, 468.

There was no error in excluding the hospital records in the trial of this case.

Each of the appellants relied upon the defense of insanity. They summarize their contention by asserting that the evidence shows that they knew what they were doing but did not know why they were doing it. There was competent expert testimony that the appellants were conscious of their acts, knew the difference between right and wrong and were able to make a voluntary choice between them. The court instructed the jury:

"Now, that [insanity] is a valid defense, under the law of this land, in other words, the law recognizes that if a person is insane that he is not guilty of an offense * * * he would not be charged with his acts which otherwise would constitute an offense if he were sane.

"Now, the term 'insanity', as used in this defense and as used in this charge, means such a perverted and

deranged condition of the mental and moral factors as to render a person incapable of distinguishing between right and wrong or unconscious at the time of the nature of the action he has committed or where though conscious of it and able to distinguish between right and wrong and knows that the act is wrong, yet, his will, by which I mean the governing power of his mind has been otherwise than voluntarily so completely destroyed that his actions are not subject to it but are beyond his control."

The defendants' counsel announced that there were no exceptions to the charge. It is the instruction approved by the Supreme Court in Davis v. United States, 165 U.S. 373, 17 S.Ct. 360, 41 L.Ed. 750. This Court, in Howard v. United States, 5 Cir., 1956, 232 F.2d 274, declined to repudiate the definition of insanity announced in the Davis case.

Because of the errors in the admission of Government Exhibits 3 and 4 the cause must be reversed for a new trial.

Reversed and remanded.