Nagel Jacob MAROON, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-
TION SERVICE, Respondent.**

No. 17926.

United States Court of Appeals
Eighth Circuit.

Aug. 25, 1966.

James Daleo, Kansas City, Mo., for petitioner; Norman E. Greene, Kansas City, Mo., on the brief.

Paul Nejelski, Attorney, Department of Justice, Washington, D. C., for respondent; Maurice A. Roberts, Attorney, Dept. of Justice, Washington, D. C., Richard D. FitzGibbon, Jr., U. S. Atty., St. Louis, Mo., and Stephen H. Gilmore, St. Louis, Mo., on the brief.

Before VOGEL and MATTHES, Circuit Judges and REGAN, District Judge.

REGAN, District Judge.

Before us is a petition for review of a final order of deportation. We have jurisdiction to determine the validity of the deportation order under Section 106 (a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). The District Director should not have been named or joined as a party-respondent. We substitute the Immigration and Naturalization Service as respondent. 8 U.S.C. § 1105a(a) (3).

An Order to Show Cause dated November 16, 1962, was served upon petitioner. In substance, the order alleges that petitioner is neither a native nor a national of the United States, but is a native and citizen of Mexico, who last entered the United States on or about October 5, 1909, and that he is subject to deportation pursuant to Section 241(a) (4) of the Immigration and Nationality Act, in that he had been convicted on September 29, 1950, for the offenses proscribed by Section 145(b), 26 U.S.C., of willfully and knowingly attempting to evade a large part of his income tax due for each of the calender years of 1946, 1947, and 1948, and that said offenses did not arise out of a single scheme of criminal misconduct. A hearing on the order to show cause was held in four sessions before a special inquiry officer. Evidence bearing on the issues of alienage and deportability was introduced. The petition for review, filed after all administraitve remedies were exhausted, relates to both issues.[1] We consider them in inverse order.

### Deportability

Petitioner makes no contention that he was not in fact convicted of two crimes involving moral turpitude which did not arise out of a single scheme of criminal misconduct. Under the evidence, the special inquiry officer could not have fairly reached any other conclusion. Petitioner frankly admitted several times his convictions for the three offenses alleged in the order to show cause, and that the allegations relating thereto were true. These admissions were with re-

1. The petition for review does not challenge the denial of the application for suspension of deportation under Section 244 (a) (2), 8 U.S.C. § 1254(a) (2). The finding that petitioner failed to establish his good moral character for the requisite period is supported by reasonable, substantial and probative evidence.

spect to the specific offenses alleged in the order to show cause, including the date of sentencing and the length of sentence imposed upon him after conviction.

The sole points urged by petitioner on the issue of deportability are that Exhibits 3 and 3A were inadmissible on the theory that they were not properly authenticated, and that in any event Exhibit 3 was not actually received in evidence. Exhibit 3 is the record of conviction consisting of a copy of the indictment returned in the United States District Court for the Western District of Missouri against Nagel J. Maroon, also known as Jake Maroon, charging him in four separate counts with the crimes of income tax evasion for the years 1945, 1946, 1947 and 1948, and a copy of the judgment, sentence and commitment on counts 2, 3 and 4.

In his original decision, dated June 17, 1963, the special inquiry officer found, inter alia, that petitioner was deportable because of his conviction for the three income tax evasion offenses. On appeal to the Board of Immigration Appeals, petitioner challenged the admissibility of Exhibit 3 as not being properly authenticated in accordance with the procedure set forth in Rule 44 of the Federal Rules of Civil Procedure. Thereafter, on August 23, 1963, the Board ordered the case remanded to the special inquiry officer "for authentication of the exhibits which serve as the basis for the finding of deportability", suggesting that although Rule 44 does not control in an administrative proceeding, the procedure therein set forth should be followed to the extent possible. The hearing was then reopened on November 20, 1963, at which time Exhibit 3A was introduced in evidence. This exhibit is an exemplification certificate (AO Form 132) of the United States District Court for the Western District of Missouri.

Petitioner argues that the exhibit was erroneously admitted "because of the failure of the attesting officer to certify that he has *custody* of the record of which the exhibits is a copy." The exemplification certificate, attested by the

Clerk of the United States District Court for the Western District of Missouri, states in part,

"I, J. C. TRUMAN, Clerk of the United States District Court for the Western District of Missouri, and *keeper* of the records and seal thereof, hereby certify that the documents attached hereto are true copies of Indictment—FILED June 29, 1950 and Judgment and Commitment—FILED September 29, 1950 in *our* criminal case No. 17802 wherein the United States is plaintiff and Nagel J. Maroon, also known as Jake Maroon is defendant.

In testimony whereof I hereunto sign my name and affix the seal of said Court, in said District, at Kansas City, Mo., this 11th day of September, 1963."

On the same date, immediately under the foregoing attestation, Judge Floyd R. Gibson, then United States District Judge for the Western District of Missouri, certified that, "J. C. TRUMAN, whose name is above written and subscribed, is and was at the date thereof, Clerk of said Court, duly appointed and sworn, and *keeper* of the records and seal thereof, and that the above certificate by him made, and his attestation of record thereof, is in due form of law."

■■ Was Exhibit 3 sufficiently authenticated? We think so. We judicially know that "the clerk is the legal custodian of the records in his office". 14 C.J.S. Clerk of Courts § 39, page 1246. "He has custody of the court's records and seals, with power to certify to the correctness of the transcripts from such records * * *". 15 Am.Jur.2d, Clerks of Courts, § 1, page 515. "As a general rule the officer who is required to keep a judicial record is authorized, and is the only person authorized, to give certified copies thereof." 32 C.J.S. Evidence § 665, page 867.

In our view, the Clerk of the United States District Court, who is the "keeper" of the records and seal of his court, is necessarily the "legal custodian" of such records. It follows that the certifi-

cate that Mr. Truman is the Clerk of the District Court and the "keeper" of the records and seal of such court sufficiently constitutes a certificate that Mr. Truman has the "legal custody" of the records of that court.

Petitioner cites Chung Young Chew v. Boyd, 9 Cir., 309 F.2d 857, and Mullican v. United States, 5 Cir., 252 F.2d 398, as indicating an opposite conclusion. We do not so read these cases. The reported opinion in Chung Young Chew v. Boyd does not sufficiently enlighten us factually concerning either the official capacity of the attesting officer or the content of his certificate. The court held that "[t]he method (of authenticating the copy of the judgment, sentence and conviction) which was followed *provided no assurance* that the attesting officer had actual custody of the original record, without which he would not be in a position to make such attestation." We are not advised as to what method was used in that case. Here, the method of authenticating the record does provide adequate assurance that the Clerk of the United States District Court for the Western District of Missouri had actual custody of the original records of that court and that he was in a position to make such attestation.

The other case relied on by petitioner, Mullican v. United States, 5 Cir., 252 F.2d 398, is clearly distinguishable on its facts. One of the exhibits there involved was a group of photostatic copies of documents which were certified by the Acting Director of the Bureau of Prisons to be true and accurate photocopies of documents, the originals of some of which were recited to be on file at the penitentiary in Atlanta, and the original of another was stated to be in the files of the United States Marshal in Houston. Obviously, the Bureau of Prisons did not have actual custody of the files of the United States Marshal. And even as to those documents, the originals of which were in the custody of the Bureau of Prisons, the certificate wholly failed to show "that the *copies, from which the photocopies were made,* were of them-

selves official documents, or that they were true copies of the originals." The other exhibit which *Mullican* held to be erroneously admitted in evidence was a group of photostatic copies of certain documents which were certified by the Chairman of the United States Board of Parole to be "exact copies" of official documents *issued* by that Board. The certificate "in addition to having some of the infirmities inherent in" the other exhibit, contained no recitation whatever that the officer making the certificate had the custody of the records. However, we find nothing in *Mullican* holding that Rule 44 mandatorily requires that the specific word "custody" be employed, the court's concern there being with the absence of any showing that the certifying officer had the necessary nexus to the documents. We note that the court also held that proof of conviction was shown by copies of district court records "authenticated by the certificate of the *clerk* of the court with the seal of the court affixed."

■ Section 1738, 28 U.S.C., enacted pursuant to the full faith and credit clause of the Constitution, sets forth a method for proving the records and judicial proceedings of the several states, territories and possessions. It is sufficent thereunder that the copies of such records be attested by the clerk with seal of the court annexed, if a seal exists, together with a certificate of a judge of the court which states that the attestation is in proper form. This statute does not even require that the clerk's certificate or attestation show that the clerk has charge of the records of the court. 32 C.J.S. Evidence § 670b, page 876, note 26.

Here, the clerk of the United States district court certified that he is the keeper of the records of the court and attested to the correctness of the copy of records contained in the files of the court of which he is clerk, and the judge of the court also certified to the official capacity of the clerk, that he is the official keeper of the records and seal of the court, and that his certificate and at-

testation is in due form. We hold that the "totality" of the certificate is a substantial compliance sufficient to meet the requirements of Rule 44. Cf. United States v. Klissas, D.C.Md., 218 F.Supp. 880, 882.

■■ In our opinion, Exhibit 3, the record of conviction, is sufficiently authenticated. We further note that the exacting requirements of judicial admissibility are not ordinarily applicable to administrative proceedings, Bufalino v. Holland, 3 Cir., 277 F.2d 270, 275, except to the extent that due process is involved. Williams v. Butterfield, D.C. Mich., 145 F.Supp. 567, 569; Navarrette-Navarrette v. Landon, 9 Cir., 223 F.2d 234, 237. There has been no showing of a violation of due process.

■ Petitioner makes the contention that the record of conviction was not technically admitted in evidence. Again, we disagree. As we read the record, Exhibit 3 was originally admitted in evidence on February 19, 1963, without objection. On remand (November 20, 1963), the government, in compliance with the order of the Board of Immigration Appeals, offered in evidence "the authenticated copy of Exhibit 3, conviction record which supports findings of deportability." The special inquiry officer then asked counsel for petitioner whether he had "any objection to having *this* Exhibit 3 *with* the certificate of authentication made part of the record." Objection was made on the ground that the clerk's certificate does not state that the documents "are part of his records and in his custody." The objection was overruled "and the certificate of authentication on Exhibit 3 is made part of the record marked Exhibit 3A."

True, more precise language could have been employed by the special inquiry officer, but there can be no doubt that the exhibits were in fact received in evidence and that petitioner was then fully aware thereof. Thereafter, the hearing was reopened by order of the Board of Immigration Appeals, upon the petitioner's insistence that the language of Rule 44 must be followed to the letter,

"for the proper authentication" of Exhibit 3 in accordance with the procedure set forth in Rule 44 of the Federal Rules of Civil Procedure, and "for the introduction of the authenticated documents certified in accordance with the said Rule 44."

At the reopened hearing, held, on June 9, 1964, evidence was introduced relating to the position of the Administrative Office of the United States Courts that the exemplification certificate constituted a proper certification of Exhibit 3 (a position which we have sustained and which the Board of Immigration Appeals subsequently accepted) and that no change in the form of the certificate would be made. In this posture of the case, there was no need to reintroduce the exhibits which were already in evidence.

■ We have heretofore adverted to petitioner's own admissions (which he made both at the hearing on the order to show cause and in a statement given on February 20, 1957 to an Immigrant Inspector while he was incarcerated in Leavenworth), that he was convicted of the very offenses set forth in the Order to Show Cause. These admissions constitute substantive evidence. Similar admissions have been held sufficient to support a finding of deportability. United States ex rel. Chartrand v. Karnuth, D.C.N.Y., 31 F.Supp. 799; Goncalves-Rosa v. Shaughnessy, D.C.N.Y., 151 F. Supp. 906, 908. This evidence further distinguishes the instant case from Chung Young Chew v. Boyd, in which there was an entire absence of substantial evidence other than the improperly authenticated certificate to prove that the petitioner had been convicted of the crimes alleged. The evidence of deportability is well-nigh conclusive.

### Alienage

Petitioner's remaining point relates to the admissibility and probative value of Exhibits 10 and 10A, which bear on the issue of alienage. Exhibit 10 is the file of the Immigration and Naturalization Service relating to the sworn Applica-

tion for Registry of petitioner's father as an alien, dated August 18, 1942. Exhibit 10A is the certification of this Application, under date of June 9, 1964. According to the record, Exhibit 10 consists of the originals, not copies, of the Application for Registry and related papers. It appears to have been admitted into evidence on March 20, 1963, apparently without objection at that time. In its order of March 19, 1964, again remanding the case to the special inquiry officer, the Board of Immigration Appeals directed that in addition to "the proper authentication" of Exhibit 3, Exhibit 10 be properly authenticated "pursuant to Rule 44." At the reopened hearing, the documents comprising Exhibit 10 were certified by the District Director, Kansas City District, of the Immigration and Naturalization Service to be the original documents, and as so certified were marked and introduced into evidence as Exhibit 10A.

As we have indicated supra, the Federal Rules of Civil Procedure, including Rule 44, govern procedure in United States district courts and are not necessarily applicable to administrative proceedings. Parenthetically, we note that during the pendency of this review, Rule 44 has been amended, but the amendment does not affect the issue here considered.

The rule provides in part that an official record "*may* be evidenced by an official publication thereof or by a *copy* attested by the officer having the legal custody of the record, *or* by his deputy, and accompanied with a certificate that such officer has the custody." The language of this portion of the rule necessarily contemplates (aside from the official publications) that the record be evidenced by an authenticated *copy* of the record. On its face, the portion of the rule relied upon by petitioner has no application to *original* official documents such as Exhibit 10.

Petitioner's contention that Exhibit 10A was not properly authenticated is based upon the erroneous premise that the documents comprising Exhibit 10 are *copies* of the originals in the files of the

Immigration and Naturalization Service. What he has done is to confuse Exhibit 10 with Exhibit 12, the latter being a certified copy of the microfilmed record of the naturalization proceedings relating to petitioner's father. When Exhibit 12 was offered in evidence, petitioner objected on the sole ground that the statements made therein by his father constituted hearsay evidence. No complaint was then made nor is any made now of any alleged deficiencies in the certification of Exhibit 12, which, just as Exhibit 10A, was also made by the District Director of the Naturalization and Immigration Service, Kansas City. Both exhibits contain essentially the same information which bear upon the alienage of petitioner.

■ If we assume, as do the parties in their briefs, that the documents therein are copies, it is our view that Exhibit 10 was sufficiently authenticated to substantially meet the requirements of Rule 44. The District Director of the Immigration and Naturalization Service is the officer in charge of the district, and as such he acts as the authorized delegate to the Attorney General. 8 U.S.C. 1103 (a); 8 CFR 103.7. Legal custody of the records is in the Attorney General. However, Rule 44 specifically authorizes the attestation to be made by the deputy of the officer having the legal custody. The District Director is the deputy of the Attorney General within the meaning of the rule. United States v. Ansani, D.C.Ill., 138 F.Supp. 454, 461.

In Exhibit 10 (the Application for Registry of an Alien), petitioner's father stated his nationality as Syrian, and that he arrived by train from Mexico on September 15, 1908, accompanied by his wife and two sons, James and Jacob (petitioner). Jacob's place of birth was given as Mexico. Exhibit 12 reflects the fact that there were two petitions for naturalization, the first, filed in 1922, being denied and the second, filed in 1944, being granted, in both of which petitioner's father stated under oath that he entered the United States by railroad from Mexico on September 15, 1908, and

that his son Jacob (petitioner) was born in Mexico on June 15, 1908.

Petitioner argues that Exhibit 10 constitutes no probative evidence of his alienage, contending that even if the exhibit is properly authenticated, the contents thereof come within the hearsay rule. Of course, hearsay evidence does have some probative value in many situations. Such evidence is ordinarily excluded, however, for the reason that its accuracy and trustworthiness cannot be tested by cross-examination. There are numerous exceptions to the hearsay rule, particularly applicable where, as in this case, the declarant is dead. Unquestionably, petitioner's father had firsthand personal knowledge of the facts recited in the document. Petitioner's mother died before the father's statements were made, so she is equally with petitioner's father unavailable. There is no contention that the father had any motive to falsify the information contained in Exhibit 10, or in Exhibit 12 for that matter. Facts of family history and pedigree have long been admissible in judicial proceedings under a recognized exception to the hearsay rule. See Wong You Henn v. Brownell, 93 U.S.App.D.C. 43, 207 F.2d 226, 227.

The Application for Registry of an Alien (Exhibit 10) was filed over 20 years ago, and the statements therein were made under oath. We believe that what petitioner's father said about petitioner's birth and nationality, at a time when there was no controversy with respect thereto, is sufficiently trustworthy to have some probative value, particularly since it is consistent with all of the other evidence relating to the issue of alienage. Exhibit 12, the admission of which is not complained of in this review proceeding, contains the same information, but with more specificity. Moreover, petitioner himself testified to similar unequivocal declarations about his birth and alienage which his father had made to him, namely that petitioner was born in Mexico on June 15, 1908 and was a citizen of Mexico. Petitioner testified, "My father said I was born there

(Mexico) when he got (the naturalization) papers." Cf. Moncado v. Ramsey, 8 Cir., 167 F.2d 191, 195.

In our opinion, in the circumstances of this case, the statements made by petitioner's father in Exhibits 10 and 12 meet the test of trustworthiness and reliability. It has been well said, "There is no procedural canon against the exercise of common sense in deciding the admissibility of hearsay evidence." Dallas County v. Commercial Union Assurance Co., 5 Cir., 286 F.2d 388, 397.

We fail to see any prejudice whatever to petitioner in the admission into evidence of the written declarations of his father which are contained in Exhibit 10.

Evidence of petitioner's alienage was not limited to the father's declarations contained in Exhibits 10 and 12 and petitioner's corroboration of such declarations. Even if the exhibits were excluded, the result would be no different. Petitioner has consistently given his date of birth as June 15, 1908, a date which is earlier in time than the date his parents entered this country. In 1940, petitioner filed an Alien Registration Form, reciting his birth in Mexico on June 15, 1908, and his citizenship as Mexican. In the same year, petitioner filed an Application for Registry of an Alien, which sets forth (mostly in his own handwriting) that petitioner was born in Mexico on June 15, 1908, that he entered the United States on October 5, 1909, accompanied by his father, mother and brother, and that his nationality was Mexican. A Certificate of Lawful Entry was finally granted on this application on April 15, 1942.

In February, 1941, petitioner made a sworn oral statement to a naturalization examiner who was then investigating a charge that petitioner had falsely represented himself to be a citizen of the United States. In this statement, petitioner verified the date of his birth as June 15, 1908, and his place of birth as Mexico, based on statements his father had made to petitioner. Petitioner then claimed that he first learned that he was

born in Mexico about two years previously:

"Q. What made you wonder if you were a citizen?

A. To hold my (WPA) job I had to be one. I was foreman on the job and I couldn't sign that paper, so I resigned after I was positive after poppa said he didn't have his (citizenship) papers."

And again, "In the last 8 months I have known that I am not a citizen."

In 1942, petitioner filed a petition for naturalization, once again reciting his birth in Mexico on June 15, 1908, and his entry into the United States by railroad on October 5, 1909. Earlier, in 1940, petitioner filed an Application for Certificate of Arrival and Preliminary Form for Petition for Citizenship, which, in his own handwriting, states that he was born in Mexico on June 15, 1908, and that he entered the United States from Mexico with his father, mother and brother James.

While serving his sentence at Leavenworth for income tax evasion, petitioner signed an Alien Address Report Card giving his nationality as Mexican. He testified he filed such report cards each January as required by law. In his February 20, 1957 signed and sworn statement to the Immigrant Inspector, petitioner again recited his birth in Mexico on June 15, 1908, and his citizenship as Mexican. Finally, although we accord it no probative value, we note that the birth certificate of petitioner's daughter, filed in August, 1930, which was produced and admitted in evidence at petitioner's instance, (on another issue), affirmatively states that petitioner's birthplace was Mexico City.

At the hearing, petitioner testified that he did not know whether he was a citizen of the United States or of some other nation, and so could not truthfully state whether the allegation in the Order to Show Cause, to the effect that he is a citizen of Mexico, is true or false. Even in his petition for review, he makes no affirmative averment that he is a

national of the United States, stating simply, "He was born on the 15th day of June, 1908, and is *of the belief* that he was born in the United States of America."

In this situation, petitioner's present claim to be a national of the United States, wholly unsupported by any substantial evidence whatever, and utterly inconsistent with the documents admittedly executed by him, would appear to be frivolous. Petitioner has made no showing to the contrary, as required by § 1105a(a) (5), 8 U.S.C. In any event, on this record, no genuine issue of material fact is presented as to petitioner's alienage. The evidence of alienage which supports the order of deportation is overwhelming and uncontradicted. Hence, in our independent determination of the issue of alienage, we find and rule that petitioner is not a national of the United States.

The final order of deportation is affirmed.