William Oscar TIMMS, Jr.,
Appellant,

v.

UNITED STATES of America,
Appellee.

No. 25959.

United States Court of Appeals
Fifth Circuit.

Nov. 22, 1968.

3. And for more than seven months before his employment on the "Matsonia."

**880**

———◆———

Joe H. Bynum, Jr., Atlanta, Ga., for appellant.

Charles L. Goodson, U. S. Atty., Theodore E. Smith, Asst. U. S. Atty., Atlanta, Ga., for appellee.

Before WISDOM and AINSWORTH, Circuit Judges, and JOHNSON, District Judge.

JOHNSON, District Judge:

This is an appeal from a conviction by jury verdict on an indictment charging an attempt to escape from the custody of the Attorney General in violation of 18 U.S.C. § 751. At the time of the alleged attempt, appellant was serving a twenty-year sentence for bank robbery. It is not disputed that Timms was found outside of his assigned cell and near the prison wall with a crude steel ladder approximately forty feet in length. Indeed, appellant called other participants in the attempt to testify concerning his role. The sole issues on appeal are the correctness of the trial court's charge to the jury on the question of insanity and the correctness of the trial court's conclusion that there was sufficient admissible evidence that Timms was legally confined in the prison from which he escaped.

**I**

Timms was examined by a psychiatrist, Dr. Juan Mascort, prior to trial. Dr. Mascort's testimony and examination report comprised the principal evidence at trial on the insanity issue. The able and experienced trial judge correctly concluded from this testimony that there was no evidence that the defendant was insane from the standpoint of "the right and wrong" test and did not submit the issue to the jury. He did charge the jury, however, that they should find Timms not guilty if he acted under an irresistible impulse which was the result of a diseased mind.[1] Timms' counsel had requested that the trial judge give one of two proposed charges on the insanity issue. The first proposal was an amalgam of the right and wrong test, the so-called McNaghten Rule, and the irresistible impulse test.[2] The second proposal is that found in the Model Penal Code of the American Law Institute and apparently adopted by the Seventh Circuit.[3] United States v. Shapiro, 383 F.2d 680, 686 (7th Cir. 1967). Appellant's argument is essentially that it was error for the court to separate the McNaghten charge from the irresistible impulse charge. If, the argument goes, there was evidence requiring the jury to pass upon the issue of irresistible impulse, then the court was

---

1. The full text of Judge Hoffman's charge on the insanity issue is set out as Appendix A.

2. The pertinent part of that proposed charge is as follows:

   "Under the law a person who commits a criminal act is sane if (a) at the time he had sufficient mental capacity to distinguish right from wrong as to the particular act and if (b) he had the mental capacity and reason to understand the nature and character of the act and its consequences and if (c) his doing of the act was not occasioned by an uncontrollable or irresistible impulse."

3. The version proposed by appellant provides:

   "The defendant has interposed insanity as a defense. The law presumes that a defendant is sane. This presumption is rebuttable. Where a defendant introduces some evidence that he had a mental disease or defect at the time of the commission of the crime charged, the prosecution must establish beyond a reasonable doubt that defendant did not have a mental disease, or defect, or that despite the mental disease or defect he had substantial capacity both to appreciate the wrongfulness of his conduct and to conform to the requirements of the law."

also required to submit the McNaghten issue to the jury. We disagree.

In Howard v. United States, 232 F.2d 274, 276 (5th Cir. 1956) this Court developed the following distinction:

"The district court further erred in its charge in requiring the defendant to adduce proof *both* that he did not know the difference between right and wrong *and* that he was unable to refrain from doing wrong. *Either* condition existing at the time of the commission of the act and as the result of some mental defect or disease was sufficient to make the defendant not guilty." (Emphasis in original.)

That distinction recognizes the difference between diseases or defects affecting cognition, to which the McNaghten rule relates, and those affecting volition,[4] to which the irresistible impulse charge is directed. Where, as here, what little evidence there was tended only to show a volitional disorder, it was not error to restrict the jury to that theory. Timms received at least as favorable a charge as the evidence warranted.

## II

A conviction under 18 U.S.C. § 751 requires proof not only of an escape or attempted escape but also of a conviction and confinement pursuant to that conviction. The Government introduced two documents in an effort to prove these elements. The first was an exemplified copy of appellant's Judgment and Commitment, properly authenticated pursuant to Rule 44(a), Federal Rules of Civil Procedure, and 28 U.S.C. § 1733, which apparently showed the United States Marshal's return, required by 18 U.S.C. § 4084,[5] on its face. This exhibit was admitted without objection under the terms of Rule 27, Federal Rules of Criminal Procedure which provides: "An official record or an entry therein or the lack of such a record or entry may be proved in the same manner as in civil actions."

The second exhibit offered and admitted on the question of conviction and confinement was a certified copy of the same original Judgment and Commitment which had been delivered by the United States Marshal to the United States Penitentiary, Atlanta, Georgia, at the time of Timms' commitment, as required by 18 U.S.C. § 4084, supra. The first document on this question that was offered and, without objection, admitted into evidence clearly established Timms' conviction. Appellant's contentions are that such evidence was not by itself sufficient to establish confinement pursuant to that conviction and that the certified copy of the same document was not admissible, and that there was therefore a failure of proof. The argument is not tenable.

■ In a case such as this where there is no suggestion that the prisoner had been moved, the copy of the Judgment and Commitment bearing the United States Marshal's return designating Atlanta as the place of confinement is sufficient evidence of confinement pursuant to that conviction. Strickland v. United States, 339 F.2d 866 (10th Cir. 1965); Hardwick v. United States, 296 F.2d 24 (9th Cir. 1961). Mullican v. United States, 252 F.2d 398, 70 A.L.R.2d 1217 (5th Cir. 1958), also supports that rule. In *Mullican*, there was a copy of the judgment and sentence in Alabama, with an endorsement of the Marshal's

---

4. Judge Bell, dissenting in Carter v. United States, 325 F.2d 697, 707 (5th Cir. 1963), defines cognition as "the intellectual process of recognizing the difference between right and wrong" and volition as "the act of willing or choosing, which includes the capacity to control one's behavior."

5. 18 U.S.C. § 4084 provides:
"Whenever a prisoner is committed to a warden, sheriff, or jailer by virtue of a writ, or warrant, a copy thereof shall be delivered to such officer as his authority to hold the prisoner, and the original shall be returned to the proper court or officer, with the officer's return endorsed thereon."

return showing delivery of the defendant Shores to the United States Penitentiary at Atlanta. There was also a copy of judgment and sentence in Texas, and a return of the Marshal showing delivery of the defendant Mullican to the United States Penitentiary at El Reno, Oklahoma. Both were held "properly authenticated" and "properly admitted" into evidence. *Mullican,* supra, at 401. It seems clear that if the defendants there had escaped from either of the institutions named, there would have been no problem of proof. The difficulty was that both defendants were subsequently transferred to the penitentiary at Texarkana, Arkansas, and the Government was unable to produce admissible evidence of their transfer and confinement there.

■ The Government also introduced a copy of the original judgment of conviction required to be left at the penitentiary by § 4084. This copy, however, was not exemplified in the manner prescribed by Rule 44(a). The Government contends that it was admissible via the route of Rule 27 of the Federal Rules of Criminal Procedure, supra, and the Federal Business Records Act, 28 U.S.C. § 1732.[6] Since § 4084 requires both the making and the delivery of the copy, it seems clear that it constitutes a record made in the regular course of business. We can see no reason in these circumstances to restrict the Government to the method of introducing Government records provided by 28 U.S.C. § 1733. 18 U.S.C. § 4082 gives the Attorney General virtually total discretion in designating a place of confinement and in transferring a person from one place of confinement to another. Since there is so little reason to doubt that a given prisoner would not have been designated to confinement at the place where he is confined in fact, compliance by the Government with § 4084, as evidenced by the copy left at the institution of confinement, is perfectly adequate proof of confinement pursuant to the conviction.

Summarizing, we conclude that each of these documents was properly admitted into evidence and that *either* of them would provide sufficient evidence on the confinement issue to sustain a conviction of a violation of § 751.

The judgment is affirmed.

## APPENDIX A

"I have concluded as a matter of law, ladies and gentlemen, first, that even though the desire of the defendant to leave the penitentiary by reason of the illness of his mother may be plausible excuse in the minds of some people, it has no legal basis, as I told you. One does not have the legal right to leave the penitentiary because of illness in a family. However, that evidence was presented to you because it may or may not, in your judgment, affect your decision on what I will discuss here briefly relative to what is known as irresistible impulse.

"I have concluded as a matter of law that there is no evidence in this case that this defendant is insane from the standpoint of what is known as the right and wrong test.

"Growing up with the theory of criminal responsibility for acts, however, is a doctrine known as irresistible impulse.

---

6. 28 U.S.C. § 1732(a) provides:
   "In any court of the United States and in any court established by Act of Congress, any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence, or event, shall be admissible as evidence of such act, transaction, occurrence, or event, if made in regular course of any business, and if it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence, or event or within a reasonable time thereafter.
   "All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but such circumstances shall not affect its admissibility.
   "The term 'business,' as used in this section, includes business, profession, occupation, and calling of every kind."

To constitute a defense sufficient to excuse the commission of a crime, if one acts under an irresistible impulse which was the result of a diseased mind, then one is not criminally responsible for the act in question.

"An irresistible impulse is a moral insanity, consisting of an irresistible inclination to commit a crime. It is some unseen pressure on the mind, drawing that mind to consequences which it sees but cannot avoid and at the same time placing it under a coercion which, while its results are clearly perceived, the mind is incapable of resisting.

"It is not sufficient, ladies and gentlemen, that the defendant may have had a mere impulse to commit the crime for which he is charged. The test is whether the defendant's conduct was the result of a mental disease or defect to such an extent that the defendant lacked substantial capacity either to appreciate the criminality of his conduct or that he lacked substantial capacity to conform his conduct to the requirements of the law.

"In essence, it is for you, as jurors, to determine whether the defendant was forced to commit this alleged crime by such a controlling disease of the mind against his will or whether he allegedly committed the crime or did, in fact, commit the crime, if you find that he did, voluntarily.

"So it will be seen that mere irresponsibility is not sufficient. It must be coupled with the existence of a diseased mind or mental defect.

"Even though the defendant may have been laboring under what I have described to you here, which is sometimes referred to as partial insanity, if the defendant still understood the nature and character of his act and its consequences and had a knowledge that it was wrong and criminal, together with a mental power sufficient to apply that knowledge to his own case and to his own situation, and a knowledge that if he did the act he would do wrong and receive punishment and that he possessed with all a

will sufficient to restrain the impulse that may have arisen from a diseased mind or mental defect, then such partial insanity or irresistible impulse, as it may be designated, would not be sufficient to exempt him from the responsibility to the law for his crime if, in fact, he committed the crime.

"Thus, we see that an irresistible impulse is coupled with a mental disease or defect to such an extent that it causes the defendant to lack substantial capacity either to appreciate the criminality of his conduct or that it causes him to lack substantial capacity to conform his conduct to the requirements of the law."