**David W. WION, Petitioner,**

v.

**J. T. WILLINGHAM, Warden, United States Penitentiary, Leavenworth, Kansas, and the United States of America, Respondents.**

**Civ. A. No. 9259.**

United States District Court
D. Colorado.

Sept. 27, 1965.

See also 10 Cir., 337 F.2d 230.

John D. Ward, Denver, Colo., court-appointed atty., for petitioner.

Lawrence M. Henry, U. S. Atty., Denver, Colo., for respondents.

CHILSON, District Judge.

The petitioner is now confined in the Federal Penitentiary at Leavenworth, Kansas, pursuant to a sentence imposed by this Court after the petitioner's conviction by a jury of a violation of Title 18 U.S.C. Section 1716.

The petitioner appealed his conviction to the Tenth Circuit Court of Appeals and the conviction was affirmed. (See Wion v. United States, 10 Cir., 325 F.2d 420).

Pursuant to Title 28 U.S.C. Section 2255, the petitioner has filed a motion to vacate the sentence. The Court permitted the motion to be filed in forma pauperis, ordered the respondents to file a return to the petition, and appointed Mr. John D. Ward, an attorney in Denver, Colorado, to represent the petitioner. The respondents filed a return which was traversed by the petitioner.

The matter was then set for hearing on September 17, 1965, and the Court ordered the petitioner returned for appearance in person at the hearing.

The matter came on for hearing on September 17, 1965, at which time the petitioner was present in person and by his appointed counsel, Mr. John D. Ward, and the respondents were represented by the United States Attorney, Mr. Lawrence M. Henry.

The petitioner orally moved for a continuance of the hearing to procure the attendance of witnesses. Upon inquiry by the Court the petitioner did not disclose the names and addresses of the witnesses and the nature of the testimony to be elicited from them. The Court therefore denied the motion for a continuance.

The evidence offered and received at the hearing consisted of the transcript of the trial proceedings in Criminal Action No. 16791, in which proceedings the petitioner was convicted and sentenced, and which includes the proceedings had in connection with a motion of the petitioner to suppress evidence. In addition, the petitioner gave unsworn testimony. (Although the petitioner refused to be sworn, he was permitted by the Court to take the witness stand and give unsworn testimony which does not differ in any material respects from the testimony given by the petitioner at the time of his original trial).

After receiving the evidence the Court heard the argument of counsel and took the motion under advisement.

The Court has now fully considered the evidence and argument of counsel and is now duly advised.

The grounds for the motion to vacate the sentence are that the petitioner's federal constitutional rights were invaded by reason of the following:

(1) That on January 23, 1962, the federal postal inspectors made an illegal search of the apartment occupied by the

petitioner and his son, George Wion, and that certain articles (three pairs of pliers admitted into evidence as Exhibits 1, 2 and 3) were illegally seized.

(2) That on January 23, 1962, federal postal inspectors searched the automobile of George Wion and took from a tool box located in the trunk of George Wion's car a pair of pliers and a pair of "diagonal cutters", which were admitted into evidence as Exhibits 4 and 5; that the tool box was the property of the petitioner; that the search of the tool box without a search warrant and the seizure of the pliers and diagonal cutters therefrom constituted an unreasonable search and seizure in violation of petitioner's constitutional rights.

(3) That on January 29, 1962, federal postal inspectors made a search of the apartment which had been occupied by the petitioner and his son, George Wion, and seized some newspapers, including the two portions of newspapers which were admitted in evidence as Exhibits 29–D and 29–F.

As previously stated, the only evidence offered in support of the motion is the transcript of the proceedings in Criminal Action No. 16791 and the unsworn testimony of the petitioner which does not differ materially from his testimony in Criminal Action No. 16791.

In other words, the evidence of the facts and circumstances surrounding the alleged searches and seizures which is to be considered by this Court in determining this motion is the same evidence as that which was before this Court when it admitted Exhibits 1, 2, 3, 4, and 5, and Exhibits 29–D and 29–F into evidence in Criminal Action No. 16791, and is the same evidence which was before the Circuit Court of Appeals when it affirmed the petitioner's conviction.

This Court and the Circuit Court of Appeals, upon this evidence, heretofore determined that the taking of Exhibits 1, 2, and 3 from the apartment on January 23, 1962, was a seizure incident to the lawful arrest of the petitioner and was not an unreasonable search and seizure.

The petitioner urges now, as he did previously, that his arrest by the postal authorities was unlawful because the postal inspectors have no authority to make an arrest, and therefore the search and seizure was illegal. The Circuit Court of Appeals, in disposing of this contention, pointed out that Section 837 of the California Penal Code authorizes a private person to make an arrest "[w]hen a felony has been in fact committed, and he has reasonable cause for believing the person arrested to have committed it". (Wion v. United States, 325 F.2d 420 at 423). Petitioner now contends that Section 837 of the California Penal Code is unconstitutional but cites no authority therefor. This Court determines that this contention of the petitioner is without merit and reiterates that the search of the apartment on January 23, 1962 and the seizure of Exhibits 1, 2, and 3 at that time was not unreasonable or illegal.

We next consider the seizure by the postal inspectors of the pliers and cutter (Exhibits 4 and 5) from the automobile of George Wion.

No motion was made by the petitioner to suppress this evidence and no objection was made to the introduction into evidence of the two items taken from George Wion's car, namely: Exhibits 4 and 5. (See Volume III of Transcript of Trial Proceedings, page 519). (When referring to the Transcript of Trial Proceedings, the page numbers refer to the number in the upper right hand corner of the page).

The evidence concerning the search of the George Wion car is found in the transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, at pages 15 to 18, 22 and 23, 29 and 30, 37 and 38, and 40.[1] From this evidence it appears

---

1. "Q Now, in addition to the apartment search, which you have described, did your search extend to any other place?

A Yes.

that the car was owned by George Wion; that the search of the car was with his consent freely and voluntarily given; that the petitioner's tool·box was in the

Q Where was that?

A A search of the automobile of George Wion, outside the Wion apartment.

Q How do you know it was George's car?

A Well, he told me it was.

Q Was that statement made in the presence of the defendant?

A Yes.

Q Was there a discussion in the defendant's presence about the proposed search of George's car?

A Yes.

Q Did you then proceed to search George's car?

A Yes.

Q Was George present?

A Yes.

Q What statement did George make having to do with your authority or absence to search George's car?

A Well, the search was made at George's invitation. He said, "My car is parked outside. Do you want to search it too?" I said, "Yes, I think it would be a good idea."

We started to go out the door and the defendant said to George, "Where are you going?" And he said, "We are going out to search my car." And I said to the defendant at that point, standing near the door, "George asked me if we wanted to search his car," and I said, "Yes. I think it would be a good idea. We will be back in a few minutes."

Q Did you then conduct a search?

A Yes.

Q Was George present?

A Yes.

Q What articles did you seize as a result of that search?

A One pair of pliers and—or you might call them end cutters, and one pair of diagonal wire cutters.

Q Do you recall a brand name on either of those?

A The pliers were "Craftsman." They were kind of a worn pair. The end cutters or—pardon me—the diagonal cutters, I don't recall from memory the brand name, because they were worn, and originally had colored handles.

Q Did you, subsequent to that seizure, have any conversation with the defendant that day?

A Yes.

Q Did that conversation relate to the identity or ownership of any of the things taken from George's car?

A Yes.

Q What was the conversation?

A Well, George and I returned to the apartment with the two tools I have previously mentioned. As we got in there, in the apartment, I said to the defendant David, "George showed me your tool box in his car. I have examined the tools in that box and I have taken out of that box this pair of pliers," showing them to him, and this pair of diagonal cutters. I would like to examine these tools in connection with this case." He said, "Okay, but you will have to give me a receipt." I said, "I was just about to do that, but I wanted to make sure it was all right with you, first."

I then wrote out a receipt for these two items to Mr. Wion, and he had given his wallet and personal papers to his son to keep, as he was going to be taken into custody. And George said, "Well, I'll take care of the receipt, okay, Dad?" And he said, "Yes, you keep them."

(See transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, pages 15 to 18).

"Q Now, it's my understanding, Mr. Conway, that you took some pliers, I believe, identified as Exhibits 4 and 5 from Mr. George Wion's car; is that correct?

A Yes.

Q Yet, you gave a receipt to Mr. David Wion; is that not true?

A Yes.

Q What was the purpose of giving a receipt to the defendant David Wion when the tools were removed from Mr. George Wion's car?

A Because they were the property of Mr. David Wion.

Q How did you ascertain this information, Mr. Conway?

A Well, first of all, at the car, I was advised by George Wion that a large wooden box contained the tools of his father. This was in the trunk of the car.

Q Was this in the presence of the defendant David Wion?

A No.

Q Then you didn't know they belonged to David Wion, did you?

THE COURT: Just a moment, Mr. Thorn. You asked a question, and I think it's pertinent. Let's let the witness finish it.

MR. THORN: All right, Your Honor.

A As I say, I looked through this box of tools and removed Exhibits 4 and 5, then returned to the apartment with George. And I then said to David, "George showed me your tool box in his car. I have taken these two tools," name-

trunk of the George Wion car; that the tool box was unlocked; that after the removal of Exhibits 4 and 5 from the tool box the postal inspector, with George Wion, returned to the apartment where the postal inspector advised the petitioner of the search of the tool box and the re-moval of the pliers and diagonal cutters (Exhibits 4 and 5); the postal inspector advised the petitioner that he would like to examine these tools in connection with this case and the petitioner replied, "Okay, but you will have to give me a receipt"; that the postal inspector then

ly, Exhibits 4 and 5, "from your tool box, and we would like to examine them."

And he then said, "Okay, but you'll have to give me a receipt for them." I said, "I was just about to do that, but I wanted to make sure it was all right with you to take them, first."

(See transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, pages 22 and 23).

"Q (By Mr. Thorn) Mr. Conway, in referring to the exhibits 4 and 5, you stated they were removed from a wooden box. Could that have been a metal box?

A My recollection is that is was wooden, but it was a big thing on the left side of the trunk, a locked trunk. George had to unlock it. I feel sure it was wooden, although I wasn't too much concerned with the box. I was more concerned with what was in it.

Q What else was in it?

A Well, it was a large quantity of tools, hand tools of various sorts, hammers and screw drivers and things of that kind.

Q Was the box itself locked?

A No. The trunk was locked. But the box was not locked.

Q Was there a hasp on the box?

A Yes, I believe so. It seems to me there was. Although I'm not completely positive of that, but I believe there was.

Q Was there more than one box in the trunk?

A There was only one box of this size. It seems to me there were several smaller items of George's over on the right side of the trunk."

(See transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, pages 29 and 30).

"Q I hand you here a box of tools, each of which has been designated by a different number, Government's 1, 2, 3, 4 and 5. Could you state to the Court which of those exhibits were taken from the house or the apartment building?

A Yes. One through four.

Q One through four were all taken from the apartment? Is that correct?

A Yes.

Q Will you state to the Court from where Exhibit 5 was taken?

A From out of the car.

Q Whose car?

A My car.

Q Under what circumstances?

A He wanted to search the car also. And I let him. We went out and I let him see my trunk first, and then in the trunk was a metal box which had all car tools and stuff like that for working on cars, mechanic's tools. And I had a few other rags and stuff for the car in the back. Then we searched the interior.

Q You say, "We searched it." Did you participate in it?

A I opened the doors and things like that.

Q May I ask whether or not you offered your consent to this search of your automobile?

A Yes, I offered it. He asked to see the car.

Q George, at that time, did you feel that you were under any coercion or force to allow them to search that car?

A In what way?

Q Were they forcing—were you intimidated? Were you frightened?

A No, I was not."

(See transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, pages 37 and 38).

"Q You stated that Exhibit 5 was taken from a metal box in your automobile; is that correct?

A Yes.

Q Where was this automobile located?

A Parked around the corner down the street.

Q To whom did Exhibit 5 belong?

A Well, it was in the box, metal box, which was my father's.

Q Had your father stored this box in your car?

A He had put it in, yes."

(See transcript of the hearing on Monday, June 18, 1962, on the defendant's motion to suppress certain evidence, page 40).

wrote out a receipt for the two items and gave it to George with the consent of the petitioner.

These facts are not too dissimilar from the facts in Sartain v. The United States, 303 F.2d 859, (9th Cir.). The evidence disclosed that the defendant Sartain delivered a brief case to the home of his friend Zucker with the key attached to the handle. Upon learning of Sartain's arrest, Zucker advised his maid to take the brief case to Berman's (a lawyer) office and have him call the police. Berman called the police and the brief case, which was still locked, was delivered to the police but the key could not be found. The police cut the flap and discovered a large quantity of heroin inside the brief case. The Circuit Court of Appeals, in upholding the admission of the contents of the brief case into evidence against Sartain, stated:

"In resolving the reasonableness of the activity shown in this record, we must measure the extent to which appellant's privacy has been forcibly invaded, the justification for an invasion, and the general reasonableness of the conduct of the officers in carrying it out."

██ Applying this standard to the facts in this case, the Court concludes that the search of the petitioner's tool box and the seizure of Exhibits 4 and 5 therefrom was not an unreasonable search and seizure and did not violate the petitioner's federal constitutional rights.

Petitioner's third ground for his motion to vacate his sentence alleges in essence that on January 29, 1962, six days after the petitioner's arrest, postal inspectors, without a search warrant, searched the apartment where petitioner and his son resided at the time of petitioner's arrest, and that the postal inspectors as a result of said search seized certain papers. The only papers received in evidence at the time of petitioner's trial which were obtained by the postal inspectors on January 29, 1962, were two portions of a newspaper (The Sacramento Bee) and identified as Exhibits 29–D and 29–F.

██ The burden of proof is upon the petitioner to prove the exhibits were the property of the petitioner and were seized by the postal inspectors in the course of an illegal search.

The evidence concerning the acquisition of Exhibits 29–D and 29–F is here set forth in some detail.

Postal Inspector Stokes testified that about 9:30 A.M. on January 29, 1962, George Wion came to his office in Sacramento and showed him a map which was later identified as Government's Exhibit 50. After taking a photograph of the map, Stokes and George Wion went to Wion's apartment. Stokes further testified:

"And at the apartment, he (George Wion) obtained a quantity of old newspapers and put them in the back of my car. And then George parked his car on the street alongside the apartment building and got in my car, and the two of us started out from Sacramento * * *."

"Q You have said that you stopped at George's apartment and picked up some newspapers. I hand you two documents which have been marked as Government's Exhibits 29–D and 29–F and ask you whether you can identify those papers.

"A Yes, sir, I can. They bear my initials 'J. G. S.' and the date 'January 29, 1962'.

"Q Are they among the papers that you picked up at the apartment?

"A That's right. They bear the date of January 3, 1962, Wednesday, and they are portions of the Sacramento Bee for that date."

(See Volume II, Transcript of Trial Proceedings, pages 229 to 232).

On cross-examination Stokes testified:

"Q I believe you stated that you obtained a quantity of newspaper at the apartment of George Wion; is that correct?

"A That's correct.

**312**

"Q And do you know to whom this newspaper belonged?

"A The apartment was occupied by George and the defendant. I assumed that it belonged to either one of them. I don't know.

"Q It could have belonged to either one, is that not true?

"A (Witness nods affirmatively)."

(See Volume II, Transcript of Trial Proceedings, page 296).

George Wion testified at the hearing on the motion to suppress evidence, and with regard to the newspapers in question testified that subsequent to his father's arrest on January 23, 1962, postal inspectors did come back to the apartment and took some newspapers.

"Q Whose papers were these?

"A They were both my father's and mine, newspapers we had bought on occasions.

"Q Did you know which papers you bought and which papers your father bought?

"A That's hard to say.

"Q Do you know?

"A There is two papers we both bought or two different kinds I mean.

"Q You didn't each contribute a nickel for the purchase?

"A We may have.

"Q Did you or did you not?

"A I don't know.

"Q Do you know which newspapers belong to you and which belong to your dad?

"A I do not.

"Q You just turned them all over to the inspectors; is that right?

"A Yes."

(Transcript of proceedings on defendant's motion to suppress certain evidence, held June 18, 1962, pages 43 and 44).

From the evidence the Court finds that the petitioner has not sustained the burden of proving that Exhibits 29–D and 29–F were in fact his property nor has the petitioner sustained the burden of proving that said exhibits were seized by the postal inspectors in the course of a search of petitioner's apartment.

On the contrary, the Court finds that the exhibits in question were a part of a quantity of newspapers which George Wion took from the apartment and placed in the back of Postal Inspector Stokes' automobile, and there is no evidence that the Exhibits 29–D and 29–F were the petitioner's property.

The Court concludes that the motion to vacate the sentence should be denied.

It is therefore ordered that the motion to vacate the petitioner's sentence be and the same is hereby denied.

During the pendency of the petition in this court the petitioner has filed several additional petitions, all of which have been made a part of Civil Action No. 9259. As to those petitions and motions filed subsequent to the original motion and which have not been heretofore denied by the Court,

It is hereby ordered that said motions and petitions be and the same are hereby denied.

On September 22, 1965, some five days after the hearing of the petitioner's motion, the petitioner filed with this Court another application headed "Application for a Writ of Habeas Corpus Ad Subjiciendum". This application presents no new grounds in support of a motion to vacate the sentence.

It is therefore ordered that the application for a writ of "Habeas Corpus Ad Subjiciendum" is hereby ordered filed as a part of Civil Action No. 9259, and

It is further ordered that the application be and the same is hereby denied for the reasons set forth above.

It is further ordered that petitioner's appointed counsel, Mr. John D. Ward, unless otherwise directed by the petitioner in writing, shall file a notice of appeal on behalf of the petitioner, designate the record on appeal, apply for an order of the court permitting the petitioner to appeal in forma pauperis, and having done so, the said John D. Ward is discharged from further obligations or responsibilities to the petitioner.