## Don E. HARDING and Thomas M. HILDEBRANDT
### *v.* STATE of Arkansas

5513                                    455 S. W. 2d 695

### Opinion delivered June 29, 1970

*Odell Carter,* for appellants.

*Joe Purcell,* Attorney General; *Milton Lueken,* Asst. Atty. Gen. for appellee.

J. FRED JONES, Justice. Don E. Harding and Thomas M. Hildebrandt were convicted in the Lincoln County Circuit Court of the crime of attempt to escape. They were sentenced to three years in the penitentiary and on appeal to this court rely on the following points for reversal:

"These cases should be reversed and dismissed

since the trial court refused to take any action upon the Motion for a new trial until the next term of Court.

These cases should be reversed and dismissed for the reason that the State did not prove that there was a conviction and that the alleged attempted escape was from a confinement by virtue of lawful imprisonment or confinement.

A mistrial should have been granted upon proof that the juror was exposed, during the trial, to improper influence.

The verdict is contrary to the weight of the evidence."

Since we must reverse and remand this case for error alleged under appellants' second point, the alleged errors under the other points will not likely arise again and to consider them here would only add volume without substance to this opinion.

The law which the appellants were accused of violating is Ark. Stat. Ann. § 41-3513 (Supp. 1969), which reads as follows:

"It shall be unlawful for any person who is lawfully imprisoned in any jail, or other place of confinement, or held in the custody of any officer, for any cause whatsoever to escape, or attempt to escape, from such imprisonment or custody without the use of force or violence to the person; and upon conviction therefor, such person shall be imprisoned for a period of not more than three (3) years; provided however, that the sentence imposed under this provision for the crime of escape or attempt to escape from imprisonment or custody shall not exceed the period of confinement imposed for the conviction of the offense for which such person is imprisoned, or prescribed by law

for the conviction of the offense for which said person may be in the custody of any officers."

The appellants were charged on separate, but identical, informations filed by the prosecuting attorney in the following language:

"The said defendant on the 20th day of June, 1969, in Lincoln County, Arkansas, did then and there wilfully, unlawfully, being a convict sentenced to the Arkansas State Penitentiary, and being held in custody on the Cummins Unit at Grady, Arkansas, a branch of the Arkansas State Penitentiary, in pursuance of an order of commitment regularly issued, did then and there wilfully, unlawfully and feloniously attempt to escape from said penitentiary, contrary to the statute in such cases made and provided, and against the peace and dignity of the State of Arkansas."

The record reveals the following facts: The isolation cells at the Cummins branch of the Arkansas Penitentiary consist of heavy wire cages inside a building and unruly prisoners are assigned to these cells as punishment for violation of prison rules and regulations. Armed guards are stationed in elevated "towers" around the isolation area and trusty guards keep a close check on the isolation cells inside the building. The appellants were isolated together in one of the isolation cells and Booker T. McDonald was one of the trusty guards. About 10 p.m. on June 20, 1969, the appellants were discovered outside the isolation cell and outside the isolation building. The wire forming the top of the isolation cell had been cut above the sink in the cell and the wire had been pulled or bent down, forming a rectangular or square hold in the top of the cell. The trusty guards testified that when the appellants' cell was found empty about 10 p.m., an alarm was sounded and a searchlight from the tower revealed the appellants running away from the isolation building toward a new building under construction near a fence. The two guards fired several shots at the appellants and Hildebrandt was wounded in the side.

The appellants' testimony differs considerably from that of the guards. They explained that for some reason, which was not quite clear to them, but in any event, wholly without foundation, guard Booker T. McDonald had formed a dislike for them, and when he found them inspecting a hole some former inmate or other person had cut in the wire top of their isolation cell, McDonald forced them, at the point of his cocked and loaded revolver, to climb through the hole and leave the building. The only logical conclusion they were able to draw from such conduct on the part of McDonald, was that McDonald wanted them killed in a prison break. They testified that they were actually on their way back to the isolation cell with their hands raised when the guards started shooting at them. McDonald and the other guards testified that McDonald had been relieved for his evening meal and had not returned from the dining area when the appellants were discovered outside their cell by the other guards, including McDonald's relief guard.

The question of whose version of the facts is correct is not important on this appeal, for this case does not turn on the voluntariness of the appellants' acts in leaving the cell. The state argues that "the record is replete with testimony from which the jury could easily believe that appellants were convicted felons and in lawful custody at the time they made their attempt to escape." The state has failed to specifically point out such testimony and we have been unable to find such in the record. It might be easy to believe that the appellants were convicted felons and in lawful custody, otherwise they would never have been in an isolation cell in the state penitentiary. Especially is this true since the appellants did not deny that they were lawfully imprisoned in the isolation cell at the penitentiary. The trouble with this approach, however, is that one must be *lawfully* imprisoned or held in custody before he can be guilty of escape or attempt to escape. The burden rests on the state to prove its allegations against the appellants, and does not lie on the appellants to disprove the allegations made by the state.

The mere fact of physical custody or imprisonment is not such evidence that will sustain a conviction for escape or attempt to escape. The *lawfulness* of the imprisonment or custody from which the escape is made or attempted is the statutory essence of the criminal offense of escape or attempt to escape, and the lawfulness of the imprisonment or custody from which the escape is made or attempted must not only be alleged by the state in the indictment or information, it must also be proved. It may be argued that a person who is incarcerated in the state penitentiary and spends a great deal of time in isolation for infraction of rules may be *presumed* to be *lawfully* imprisoned. No such presumption attends the charge of escape or attempt to escape under the statute or under our prior decisions.

In *State* v. *Murphy,* 10 Ark. 74, Murphy escaped from the penitentiary and was recaptured and tried for escape. The record of his original trial and conviction was placed in evidence. The identify of the prisoner was the real point in issue. The jury was instructed, at Murphy's request, that they would not find the prisoner guilty, unless they were satisfied from the evidence that he was the same identical Westley Murphy who was so convicted and sentenced for larceny. The Attorney General then moved the court to instruct the jury that any such question as to the personal identity of the prisoner at the bar was waived by his plea of not guilty to the indictment; and that upon the introduction of the transcript of the record of the Johnson Circuit Court, the jury were bound, by law, to presume, in the absence of any proof to the contrary, that the prisoner at the bar, was the same identical Westley Murphy, appearing by said transcript to have been so convicted and sentenced for the crime of larceny. In affirming the trial court's failure to give this instruction, this court said:

"The fact that the accused was the same individual that had been convicted of larceny in the Johnson Circuit Court, was a material and traversable averment in this indictment, and by coming in and

pleading the general issue, he did not admit his identity in respect to that conviction. *The offence charged upon the defendant in the Court below, can be committed by a convict only, and in order to fix that character upon him it devolves upon the State to prove his conviction by the record, and his personal identity by proof aliunde."* (Emphasis added).

In *Sandford* v. *State,* 11 Ark. 328, the state was permitted to read into the record, on trial for escape, judgment from transcript of the original conviction for larceny, in order to show that the prisoner had been legally convicted.

In 70 A. L. R. 2d § 3, under Anno: Justification for Escape, is found the following:

"Mere confinement within prison walls, in violation of the law of the state, does not make such imprisonment a lawful one from which it is a crime to escape if opportunity offers, said the court in *People* v. *Ah Teung* (1891) 92 Cal. 421, 28 P. 577, 15 LRA 190.

\* \* \*

See also *People* v. *Perry* (1947) 79 Cal. App. 2d Supp. 906, 180 P. 2d 465, holding that there could be no conviction of the crime of resisting arrest unless the arrest was lawful, the court saying that the same rule was applied in holding that an escape from unlawful confinement was justified.

\* \* \*

Where the accused was incarcerated in prison by virtue of a commitment valid on its face, he was lawfully in custody and his unauthorized departure constituted escape, said the court in *People* v. *Jones,* (1958) 163 Cal. App. 2d 118, 329 P. 2d 37, adding that he had his legal remedies to enforce

his legal rights and was not justified in resorting to self help.

\* \* \*

In State ex rel. *Farrior* v. *Faulk* (1931) 102 Fla. 886, 136 So. 601, it was stated that escape presupposes actual lawful custody, and that before one could be charged with the offense of escape it must be shown that at the time of the alleged escape the prisoner was held in lawful custody on a valid charge of a criminal offense or upon a conviction of such an offense.

Reversing a conviction of felony escape because of the insufficiency of the showing that defendant was incarcerated under a charge or conviction of felony at the time of the alleged escape, the court in *Fulford* v. *State* (1959, Fla. App.) 113 So. 2d 572, said that proof of lawful custody is an essential of the crime of escape, and that the warden's testimony that defendant had been in his custody for 6 months prior to the escape was not proof that that custody was lawful.

And see *Melton* v. *Culver* (1958, Fla.) 107 So. 2d 378, stating, generally, that an indictment or information charging an escape must reflect the legality of the custody at the time the escape was committed.

\* \* \*

In *Commonwealth* v. *Houseman* (1881) 3 Ky. LR 331 (abstract), it was said that to constitute a complete offense the person charged to have been suffered to escape must have been lawfully in the officer's custody, and it should be so charged in the indictment.

In a prosecution for harboring an escaped prisoner, *Bellew* v. *State* (1958) 238 Miss. 734, 106 So.

2d 146, app. dismd. and cert. den. 360 U. S. 473, 3 L. Ed. 2d 1531, 79 S. Ct. 1430, the court approved the admission of evidence as to the offenses with which the escapee was charged, saying that it was necessary for the prosecution to prove that the prisoner was in lawful custody at the time of his escape.

\* \* \*

The early English authorities apparently recognized that a showing of lawful custody was necessary for a conviction of escape. Frequently cited are 1 Hale PC 610; 2 Co. Inst. 590; 2 Hawkins PC ch. 18 § 5.

\* \* \*

The law has always demanded, before one should be adjudged guilty of the crime of escape, that the imprisonment from which he broke should be shown to be lawful and well-grounded, and it will not endure that one imprisoned without any ground or contrary to law should be adjudged guilty of felony for even forcibly regaining that liberty to which he was always and at every moment entitled, said the court in *Commonwealth* v. *Miller* (1835, Pa.) 2 Ashm 61, adding, however, that it was not merely those who were guilty of felony or other crime who might be rightfully imprisoned, but that, under many circumstances, those actually innocent might be lawfully confined and ought to submit themselves until delivered by due course of law."

In the federal case of *Mullican* v. *United States*, 252 F. 2d 398, 70 A. L. R. 2d 1217, Mullican and Shores were charged by separate indictments under the Federal Escape Act, 18 USCA § 751, with unlawfully escaping from confinement in the Federal Correctional Institution, Texarkana, Texas. They were tried and convicted. The government introduced as its exhibit

No. 1, a copy of the judgment and sentence of the district court under which Shores was sentenced to three years for interstate transportation of a solen automobile. Government's exhibit No. 2 was a photostatic copy of record of the judgment and sentence of the district court for the Southern District of Texas showing that Mullican was sentenced to two years imprisonment. Government's exhibit No. 3 was a group of photostatic documents, one of which purported to be a copy of a letter from the director of Bureau of Prisons pertaining to the place of confinement for Mullican. The original documents referred to in the letter were not in the custody of the Bureau of Prisons and the letter so stated. In holding that the photostatic copies were inadmissible, the court said:

"It is not shown by the certificate that the copies, from which the photostat copies were made, were of themselves official documents or that they were true copies of the originals."

The Fifth Circuit Court of Appeals then defined the federal statute under which the appellants were convicted and commented on same as follows:

"Since there seems to be little if any question but that the appellants were inmates of the Federal Correctional Institution at Texarkana and that they escaped from it, it seems proper to consider whether or not the admission of Government Exhibits 3 and 4 was harmless error. The statute defining the crime for which the appellants were indicted, tried and convicted, provides that:

'Whoever escapes or attempts to escape from . . . any institution in which he is confined by direction of the Attorney General, . . . shall, if the custody or confinement is by virtue of an arrest on a charge of felony, or conviction of any offense, be fined not more than $5,000 or imprisoned not more than five years, or both; or if the custody or confinement is for extradition or by virtue of an

arrest or charge of or for a misdemeanor, and prior to conviction, be fined not more than $1,000 or imprisoned not more than one year, or both.' 18 USCA § 751.

It may be unnecessary to trace a prisoner by documentation from courtroom to the place from which he escaped in order to sustain a conviction for escape but if the indictment charges, as do the indictments against Mullican and Shores, that the accused was in confinement by virtue of a conviction, there must be proof that there was a conviction and that the escape was from confinement by virtue of the conviction. Convictions are shown by Government Exhibits 1 and 2, but with Exhibits 3 and 4 excluded the confinement pursuant to convictions was not established. Although the validity of the conviction is not an essential element of the offense as was held in *Aderhold* v. *Soileau,* 5 Cir., 1933, 67 F. 2d 259, and in *United States* v. *Jerome,* 2 Cir., 1942, 130 F. 2d 514; 317 U. S. 606, 63 S. Ct. 62, 87 L. Ed. 492, there must be proof of confinement pursuant to a conviction. This is generally shown by official records. 18 Am. Jur. 370, Escape, Prison Breaking and Rescue § 27. The errors were, in our view prejudicial.''

Thus, it is seen that the statute under which the appellants were convicted in the case at bar, is much more restrictive than is the statute under which Mullican was convicted. The appellants in the case at bar were not charged with *escape* under the Act of December 17, 1838, Ark. Stat. Ann. § 41-3508 (Repl. 1964), which provides that if any *convict sentenced to the penitentiary shall escape,* he shall on conviction thereof be punished, etc. The appellants were charged with the crime of *attempt to escape* as defined and set out in § 41-3513, supra.

As originally enacted in 1953, Ark. Stat. Ann. § 41-3513 (Repl. 1964) read as follows:

"Every person lawfully imprisoned in any jail or other place of confinement or held in custody of any officer, for any cause whatever, who shall escape or attempt to escape without the use of force or violence from such imprisonment or custody shall be guilty of a misdemeanor and upon conviction shall be fined in any sum not more than five hundred dollars ($500.00) or imprisoned for any time not to exceed six (6) months, or both."

By Act No. 230 of 1967 violation of the original 1953 Act was made a felony instead of a misdemeanor. Upon conviction under the 1967 Act, the penalty was fixed at imprisonment in the penitentiary of not less than one year nor more than three years. The '53 and the '67 Acts were amended in 1969 to the present form of Ark. Stat. Ann. § 41-3513, supra. Act 66 of 1969 is a short one-section Act and only adds to the statute as amended in 1967, the following:

". . . provided however, that the sentence imposed under this provision for the crime of escape or attempt to escape from imprisonment or custody shall not exceed the period of confinement imposed for the conviction of the offense for which such person is imprisoned, or prescribed by law for the conviction of the offense for which said person may be in the custody of any officer."

Act 66 of 1969 became effective on August 7, 1969; the informations were filed against the appellants on July 7, 1969, and they were tried and convicted on January 22, 1970. The amendment provided by Act 66 of 1969 makes it now necessary to not only show by competent evidence that a person being tried for attempt to escape was lawfully imprisoned, or held in custody at the time of the attempt to escape, but it must also be shown in order to fix punishment, "the period of confinement imposed for the conviction of the offense for which such person is imprisoned, or prescribed by law for the conviction of the offense for

which said person may be in the custody of any officer."

There was no evidence at all in the case at bar that the appellants were lawfully imprisoned or held in custody. There was no evidence at all that they had even been sentenced to the penitentiary except the evidence that they were there. We conclude that the judgment of the trial court must be reversed and this cause remanded for a new trial.

Reversed and remanded.

HARRIS, C. J., dissents.