Virgil WILLIAMS *v.* STATE of Arkansas

CR 75-208                                    534 S.W. 2d 760

Opinion delivered April 5, 1976

*Bill E. Ross,* Public Defender, for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Terry Kirkpatrick,* Asst. Atty. Gen., for appellee.

FRANK HOLT, Justice. Appellant was convicted by a jury of the crime of escape and his punishment assessed at three years in the Arkansas Department of Correction. Ark. Stat. Ann. § 41-3513 (Supp. 1973).

About five hours after a robbery occurred in Mississippi County, a Crittenden County police officer heard a police radio bulletin which gave a description of the robbers. At that time he had just arrested the appellant and two other individuals on a local law violation and had them in jail. Since they fit the broadcast description, the Mississippi County authorities were so notified. These officials promptly came to Crittenden County and interrogated appellant and his confederates during the day. One of them admitted participation in the robbery and implicated appellant. The Mississippi County officials placed appellant under arrest and asked the Crittenden County authorities to hold him pending the disposition of their local charges. The next day, however, (Monday) the Crittenden County authorities notified the Mississippi County officials that appellant would be released to them subject to a detainer. That same day the appellant and his codefendants were released to the Mississippi County officials and transported by them to their county jail where they were docketed with robbery and incarcerated. Four days later, the appellant and others escaped from the jail.

Appellant first contends for reversal of his escape conviction that the "trial court erred in holding that appellant was under lawful arrest at the time of his alleged escape." Appellant's argument, in effect, is that the evidence is insufficient to establish that he was under lawful arrest at the time of his alleged escape.

In defining the crime of escape, we recently said "[T]he crime is committed by a prisoner under lawful arrest and restraint when he goes away from his place of lawful custody before he is released or delivered by due course of law." *Cassady* v. *State,* 247 Ark. 690, 447 S.W. 2d 144 (1969). We

later said:

> The *lawfulness* of the imprisonment or custody from
> which the escape is made or attempted is the statutory
> essence of the criminal offense of escape or attempt to es-
> cape, and the lawfulness of the imprisonment or custody
> from which the escape is made or attempted must not
> only be alleged by the state in the indictment or infor-
> mation, it must also be proved.

*Harding & Hildebrandt* v. *State,* 248 Ark. 1240, 455 S.W. 2d 695
(1970).

Appellant argues that a warrantless arrest by a sheriff
outside his own county, as here, is of no more validity than
that of a private citizen. *Blevins* v. *State,* 31 Ark. 53 (1876).
There we held that a sheriff could not validly serve a warrant
outside his county. Therefore, appellant argues that since he
was not taken into custody outside of the sheriff's jurisdiction
with a warrant, which is now permissible by Ark. Stat. Ann.
§ 43-411 (Repl. 1964), and not as a result of fresh pursuit,
Ark. Stat. Ann. § 43-501 (Repl. 1964), his apprehension was
unlawful in its inception. Consequently, he was not under
lawful arrest and restraint at the time of his alleged escape
from the Mississippi County jail.

We cannot agree. There existed substantial evidence
from which a jury could find that the appellant was in lawful
custody or detention at the time of his alleged escape. Ad-
mittedly, appellant was incarcerated and charged with
robbery. There was evidence of a substantial nature that the
Mississippi County authorities had reasonable grounds or
probable cause for the arrest and detention of appellant on a
robbery charge. In *Stallings* v. *Splain,* 253 U.S. 339 (1920),
appellant contended that he was entitled to habeas corpus
relief inasmuch as his original arrest and detention were il-
legal. There it was said "[W]here it appears that sufficient
ground for detention exists a prisoner will not be discharged
for defects in the original arrest or commitment." See also
*Nishimura Ekiu* v. *United States,* 142 U.S. 651 (1892). In the
case at bar, as indicated, there is evidence from which the
trier of the facts could find sufficient grounds that appellant
was in lawful detention or custody at the time of his alleged

escape. Certainly, the illegality of appellant's arrest, as asserted here, would not affect or oust the trial court of jurisdiction to try appellant for the alleged robbery for which he was being held.

However, we agree with appellant's contention that it was error for the court to hold, as a matter of law, that appellant's arrest was lawful and, therefore, did not constitute a fact issue for the jury. This was in effect a directed verdict on a factual issue which is a requisite element of the alleged offense. As we said in *Harding v. State, supra,* the lawfulness of appellant's imprisonment or custody constitutes an essential statutory element of the criminal offense of escape which must be alleged and proved. There we reiterated that "[T]he burden rests on the state to prove its allegations against the appellants, and does not lie on the appellants to disprove the allegations made by the state."

Because of the error indicated, the judgment is reversed and the cause remanded.

Reversed and remanded.

FOGLEMAN, SMITH and ROY, JJ., concur.

JOHN A. FOGLEMAN, Justice, concurring. I concur in the result; however, I do not think that the majority's attempted graft into the law of escape can survive. The authorities cited for the highly novel approach to this matter are simply inapposite. Neither involves a charge of escape.

The principal authority, *Stallings v. Splain,* 253 U.S. 339, 40 S. Ct. 537, 64 L. Ed. 940 (1920), resembles this case in only one aspect, i.e., the original arrest was made without a warrant. The prisoner had been indicted in the United States District Court for the District of Wyoming. He was arrested in the District of Columbia by Splain, the marshal for the District of Columbia, not upon a warrant issued by a commissioner for the District of Columbia, but upon a bench warrant issued from the Wyoming court to the marshal of the Wyoming district on the indictment there. Stallings, the prisoner, filed a petition for habeas corpus, alleging that his arrest and detention were illegal, and was admitted to bail.

While he was at large on bail awaiting a hearing on his petition, a warrant was issued for him on the offense charged in Wyoming. At the hearing, certified copies of the indictment and other papers were filed. The United States Supreme Court held that the original arrest and detention were lawful, either upon the bench warrant or upon the marshal's reliance upon it as evidence of reasonable cause that Stallings had committed a felony. As a secondary basis for its holding, the Supreme Court held that the pendency of the habeas corpus proceeding did not deprive the commissioner before whom it was pending of jurisdiction to entertain an application for arrest on the affidavit of complaint by the marshal. The court, in dictum, held that, even if the original arrest had been illegal, Stallings would not have been entitled to discharge, if, before final hearing, in the habeas corpus proceedings, *legal cause for detaining him had arisen through the institution of removal proceedings.* As a third ground, the court held that when Stallings was admitted to bail on the Wyoming charge at his own request, his position was no better than it would have been if his petition for habeas corpus had been made *after* he had given bail to answer the charge in Wyoming. The court said that his giving this bail rendered the legality of his original arrest and detention immaterial.

I have puzzled over the possible application of that case to the present one. I can find only one possibility. If a warrant for Williams' arrest had been issued and executed before the alleged escape, his arrest and detention at the time of the escape would have been legal and the legality of the original arrest immaterial.

In the second authority, *Nishimura* v. *U.S.*, 142 U.S. 651, 12 S. Ct. 336, 35 L. Ed. 1146 (1892), a subject of the Emperor of Japan sued out habeas corpus alleging that she had been illegally restrained of her liberty upon the ground that she should not be permitted to land in the United States. The authorities had refused to allow her to land on the basis that she was an illegal alien immigrant. The Japanese subject was held by direction of the customs authorities under the provisions of the immigration laws. She was originally held by the commissioner of immigration of the State of California, who claimed to act under instructions of, and contract with, the Secretary of the Treasury of the United States.

While the petition for habeas corpus was pending, an inspector of immigration for San Francisco was appointed by the Secretary of the Treasury. He made an inspection and examination, made a report similar to that of the state commissioner, intervened in the habeas corpus proceeding, and insisted that his action was reviewable only by the superintendent of immigration and the Secretary of the Treasury. The Supreme Court of the United States agreed with the inspector of immigration that the finding of fact by the officers of the executive branch was final and binding on the courts. The court found it unnecessary to determine whether the original detention by the state commissioner was invalid because of an implied repeal of the act under which he acted, due to the fact that the validity of her continued detention depended upon the subsequent acts of the federal inspector of immigration, which the court found to be valid. Here again, the only possible application of this authority to the case at bench, would depend upon the intervention of the service of a warrant for the arrest of Williams prior to his escape.

The principles espoused by those authorities relied upon by the majority are sound, but not compatible with the law defining the crime of escape. That law requires that the detention be legal at the time of the escape and, in the circumstances of this case, the legality of the detention is dependent upon the legality of the arrest, not upon the sanitization of an illegal one. Time does not permit an elaboration upon all the elements of the offense of escape or its history. The basic fundamentals are capsuled in a section entitled "Validity of Arrest," 27 Am. Jur. 2d 854, Arrest, § 8, viz:

In prosecutions for escape from the custody of an arresting officer prior to actual imprisonment, the escape has been held justifiable where the officer acted without authority so that the arrest was illegal. The invalidity of an arrest may also vitiate subsequent proceedings so that an escape from prison is justified. A person illegally arrested is entitled to resist any unlawful interference with his right of personal liberty and may use whatever force is reasonably necessary to do so. When an officer without authority to arrest a person attempts nevertheless to arrest him, the officer is to be regarded as a trespasser without any right to prevent the

escape of the person whom he has thus accosted. It is no crime for one, without the use of violence, to rescue or assist in the rescue of another who has been unlawfully arrested. However, a mere informality or irregularity in the arrest is no justification for a prisoner's escaping from jail, as where, for example, a defendant is held on a bench warrant, substantially sufficient, although irregularly issued.

There is no doubt in my mind, however, that there was convincing evidence that the arrest was legal in this case. The state contends, and I agree, that the evidence shows that appellant was in custody by reason of a valid citizen's arrest by a peace officer. The overwhelming weight of authority sustains the validity of a warrantless arrest by a peace officer in the capacity of a private citizen, outside the geographical subdivision of the state in which he is an officer. *State* v. *Goldberg,* 540 P. 2d 674 (Ariz. 1975); *Nash* v. *State,* 207 So. 2d 104 (Miss. 1968); *Brown* v. *State,* 217 So. 2d 521 (Miss. 1969); *United States* v. *Kriz,* 301 F. Supp. 1329 (D. Minn. 1969); *United States* v. *Montos,* 421 F. 2d 215 (5th Cir., 1970); *State* v. *Jones,* 263 La. 164, 267 So. 2d 559 (1971), cert. den. 410 U.S. 946; *State* v. *Fritz,* 490 S.W. 2d 30 (Mo. 1973), cert. den. 411 U.S. 985; *Marden* v. *State,* 203 So. 2d 638 (Dist. Ct. App. Fla. 1967); *State* v. *McCullar,* 110 Ariz. 427, 520 P. 2d 299 (1974); *United States* v. *DeCatur,* 430 F. 2d 365 (9th Cir., 1970); and *Wion* v. *United States,* 325 F. 2d 420 (10th Cir., 1963), cert. den, 377 U.S. 946, 84 S. Ct. 1354, 12 L. Ed. 2d 309, same case, *Union* v. *Wellington,* 252 F. Supp. 306 (D.C. Col., 1965).

In this case the sheriff of Mississippi County, knowing that a felony had been committed in Mississippi County by someone, had gone to Crittenden County in a purely investigatory role. While there, the confession of one of the perpetrators of the crime, incriminating Williams and another, revealed probable cause for Williams' arrest, i.e., reasonable grounds for believing that he had committed the felony. This evidence was certainly sufficient basis to justify the sheriff, a peace officer, acting in the capacity of a private citizen, to make an arrest, which the sheriff promptly did. It was not only his right but his duty to do so. See *State* v. *Jones,* 91 Ark. 5, 120 S.W. 154; *Carr* v. *State,* 43 Ark. 99. He would have been derelict in his duty had he not done so. See *Russell*

v. *State,* 240 Ark. 97, 398 S.W. 2d 213.

This is not to say, however, that a private citizen who, knowing that a felony has been committed in the county where he resides, may undertake to make an arrest without a warrant in a county other than his own when he is not in fresh pursuit of a felon. The dangers inherent in such a practice are aptly enunciated in *McCaslin* v. *McCord,* 116 Tenn. 690, 94 S.W. 79 (1906), where the following caveat was issued:

> . . . . . [W]e deem it proper to say that we do not think it was within the contemplation of our statutes that private citizens of one county should take it upon themselves to go into other counties, without a warrant, in search of criminals, except in cases of fresh pursuit of a fleeing felon endeavoring to avoid immediate capture, in an original arrest, or on immediate pursuit after arrest and escape. An opposite view and practice would lead to more violence than it would suppress, since it would foster the incursion of roving bands of strangers who might be easily counterfeited by bands of marauders.

I agree that the trial court erred in not submitting the question of legality of the detention of Williams to the jury.

I am authorized to state that Mr. Justice George Rose Smith and Madam Justice Roy join in this opinion.